THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CLICHE, Defendant-Appellant.

First District (1st Division)   No. 81—2009

Opinion filed December 27, 1982.

---

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and David A. Shapiro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Robert Cliche, was found guilty after a bench trial of four counts of illegal delivery of controlled substances in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401) and sentenced to 30 months' probation and fined costs of $1185. He appeals, contending that he was not proved guilty of the illegal delivery of controlled substances because he was a licensed medical doctor authorized to dispense prescriptions and was, therefore, exempt from prosecution under that section of the Illinois Controlled Substances Act.

We disagree and affirm.

The record discloses:

Special Agent Investigator Clem Ferguson of the Illinois Department of Law Enforcement (IDLE) testified that he was assigned to the drug diversion unit of the IDLE. He described his job as entailing the investigation of doctors, pharmacists and anyone who would have contact with controlled substances legally.

He visited the offices of defendant, Dr. Robert Cliche, at the Monitor Clinic, 5834 West Roosevelt Road, Chicago, about 3 p.m. on August 24, 1979. He first saw Dr. Cliche in the hallway outside one of the examination rooms. Ferguson was introduced to the doctor by a receptionist and then Cliche and Ferguson entered an examination room where they had a further conversation alone. Cliche asked Ferguson what strength and amount of Valium he wanted and Ferguson asked for 50 tablets of five milligram strength. Ferguson then returned to the reception area and, after a brief delay, Cliche walked to the front of the waiting room with a white index card and a slip of paper which he put on the receptionist's desk. The receptionist called out Ferguson's undercover name of Frank Deacon and Ferguson approached the desk where he was given a prescription form for 30 tablets of five milligram strength of Valium. The receptionist told Ferguson the form would cost $15. Ferguson paid her in cash and was

given a receipt for a $15 office visit.

On September 6, 1979, Ferguson returned to the Monitor Clinic. He saw Cliche alone in an examination room. Ferguson told Cliche he needed the Valium prescription refilled for 60 rather than 30 tablets. Cliche said "fine" and asked Ferguson how many pills he took a day. Ferguson said he took three to four. Then Ferguson got up and returned to the reception area. Cliche walked out after a brief time and handed a white slip of paper to the receptionist, who called out the name of Frank Deacon. Ferguson then paid the receptionist $15 and was given an office visit receipt and prescription form.

On September 26, 1979, Ferguson again visited the Monitor Clinic. He was accompanied by Osborne Curtis, another IDLE agent who was using the undercover name of Osborne Curby. Ferguson greeted Cliche alone in one of the examination rooms and asked for 90 tablets of Valium and some Preludin. Cliche told Ferguson that he would have to raise the price of the Preludin prescription to $50 because people were starting to come in there like flies for Preludin. Ferguson said he had a partner outside who also wanted a prescription for Preludin. He then returned to the reception area. The receptionist called Ferguson's undercover name and he received two prescription forms—one for 90 tablets of five milligram Valium and one for 30 tablets of 75 milligram strength Preludin. Ferguson handed the receptionist $50 for his prescription and $50 for Curtis' prescription.

Ferguson testified that on all his visits the only information he supplied to the clinic was his name and address. He gave no medical information on present treatment or medication, no past medical history and was given no medical examination. On cross-examination, he stated that he had given someone at Monitor Clinic information on his current medication; he had told the receptionist on one of his earlier visits that he had just gotten out of Cook County jail and had been on Valium. He also testified that the index card that had been prepared on him at the clinic contained only his name and address as of his September 6, 1979, visit. He did not know what information was contained on it afterward, nor did he ever ask to see any information about himself other that card. He further testified that, during his investigation of the doctor, defendant was licensed to practice medicine in Illinois in all branches and forms.

The parties then stipulated that Robin Kunze, a forensic scientist with the IDLE, would testify that she was a handwriting expert and that from her examination of exemplars of defendant's handwriting and the handwriting on the prescriptions and the office visit receipts she concluded that the prescriptions and the receipts were in the

handwriting of defendant.

Dr. Marshall B. Segal, M.D., J.D., testified that he was a practicing emergency physician; that, based on his duties as an instructor and the offices and affiliations he holds, he has had occasion to come into contact with the use of prescriptions and controlled substances. He testified that there are certain standards of medical practice for prescribing controlled substances which were implicit in the practice of medicine: Prescriptions must be issued in the "due practice" or "due course of medicine." A doctor cannot prescribe medication without having a patient's problem and a medical history. With reference to Valium, he stated that he never prescribes Valium without conducting a medical examination, although it is prescribed without examinations. Segal was asked three hypothetical questions over defense objection concerning the circumstances under which Ferguson had met Cliche and had been prescribed Valium and Preludin on the three visits. In his opinion, none of the hypothetical situations constituted conduct within the regular course of medical treatment or were they in the practice of medicine.

Defendant did not present any evidence.

■ The sole issue before us is whether a physician who is registered under the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1100 *et seq.*) can be prosecuted under section 401 of that act for delivering controlled substances. We answer this question affirmatively.

Section 401 provides (Ill. Rev. Stat. 1979, ch. 56½, par. 1401):

> "Sec. 401. Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance. ***"

"Deliver" is defined in section 102 as "the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." Ill. Rev. Stat. 1979, ch. 56½, par. 1102(i).

Subparagraph (h) of section 312 provides (Ill. Rev. Stat. 1979, ch. 56½, par. 1312(h)):

> "*** An order purporting to be a prescription issued to any individual, which is not in the regular course of professional treatment *** and which is intended to provide that individual with controlled substances sufficient to maintain that individual's or any other individual's physical or psychological addiction, habitual or customary use, dependence, or diversion of that controlled substance is not a prescription within the mean-

ing and intent of this Act; and the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances."

Thus, it is clear that the delivery of possession of a controlled substance by what purports to be a legitimate prescription, but which is not, is not an authorized delivery "[e]xcept as authorized by this Act" within the exception in section 401.

Section 401(a)(1) of the Federal Controlled Substances Act (21 U.S.C. sec. 841(a)(1) (1976)), parallel in substance to section 401 of the Illinois Act, provides:

"Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance \*\*\*."

In *United States v. Moore* (1975), 423 U.S. 122, 46 L. Ed. 2d 333, 96 S. Ct. 335, the Supreme Court held that registered physicians can be prosecuted under section 841(a)(1) when their activities fall outside the usual course of professional practice. The court said (423 U.S. 122, 131-32, 46 L. Ed. 2d 333, 341-42, 96 S. Ct. 335, 340):

"Section 841(a)(1) makes distribution and dispensing of drugs unlawful '[e]xcept as authorized by this subchapter . . . .' Relying on this language, the Court of Appeals held that a physician registered under the Act is *per se* exempted from prosecution under §841 because of his status as a registrant. We take a different view and hold that only the lawful acts of registrants are exempted. By its terms §841 reaches 'any person.' It does not exempt (as it could have) 'all registrants' or 'all persons registered under this Act.'

\*\*\* We think the statutory language cannot fairly be read to support the view that all activities of registered physicians are exempted from the reach of §841 simply because of their status."

The court also said (423 U.S. 122, 134, 46 L. Ed. 2d 333, 343, 96 S. Ct. 335, 342):

"The legislative history indicates that Congress was concerned with the nature of the drug transaction, rather than with the status of the defendant."

The court in summary said (423 U.S. 122, 142-43, 46 L. Ed. 2d 333, 348, 96 S. Ct. 335, 345):

"The evidence presented at trial was sufficient for the jury to

find that respondent's conduct exceeded the bounds of 'professional practice.' As detailed above, he gave inadequate physical examinations or none at all. He ignored the results of the tests he did make. He did not give methadone at the clinic and took no precautions against its misuse and diversion. He did not regulate the dosage at all, prescribing as much and as frequently as the patient demanded. He did not charge for medical services rendered, but graduated his fee according to the number of tablets desired. In practical effect, he acted as a large-scale 'pusher'—not as a physician."

The record here shows that Special Agent Ferguson of the Illinois Department of Law Enforcement testified that on three occasions he visited the defendant's clinic and received "prescriptions" for controlled substances without having been examined by defendant. In essence, Agent Ferguson bought the "prescriptions," although the receipts from the defendant indicated "office visits." Dr. Segal was a practicing emergency physician who testified to the implicit standards of medical practice in dispensing controlled substances. In Dr. Segal's opinion, the complained-of actions of defendant were outside the regular course of professional medical treatment.

■ In the instant appeal, defendant does not challenge the sufficiency of the evidence that resulted in his conviction. Defendant argues, however, that he can be prosecuted only under section 312. We disagree.

In *Moore*, the court rejected a similar argument, stating (423 U.S. 122, 138, 46 L. Ed. 2d 333, 345, 96 S. Ct. 335, 343):

> "But we think it immaterial whether Dr. Moore also could have been prosecuted for his violation of statutory provisions relating to dispensing procedures. There is nothing in the statutory scheme or the legislative history that justifies a conclusion that a registrant who may be prosecuted for the relatively minor offense of violating §829 is thereby exempted from prosecution under §841 for the significantly greater offense of acting as a drug 'pusher.' "

So in the case before us, there is nothing in the statutory scheme to prohibit a physician who may be prosecuted for the relatively minor technical violation of section 312 from being prosecuted under section 401 for the significantly greater offense of acting as a "drug pusher." See the legislative intent as specifically stated in section 100. Ill. Rev. Stat. 1979, ch. 56½, par. 1100.

In *United States v. Green* (7th Cir.1975), 511 F.2d 1062, *cert. denied* (1975), 423 U.S. 1031, 46 L. Ed. 2d 404, 96 S. Ct. 561, the Sev--

enth Circuit had earlier reached the same conclusion as the Supreme Court did in *Moore*. The court found that the proof showed, as here, that the defendant wrote and sold prescriptions to individuals outside the scope of his professional duties. The court said (511 F.2d 1062, 1070):

"*** Thus, it is clear that the prescriptions involved in the present cases were not effective because they were not issued for a legitimate medical purpose. The exemption from section 841(a) is applicable only if the action of the practitioners is authorized. Since there was no lawful prescription ever written, it follows that section 829 has not been complied with and the dispensing of the controlled substances in these cases has not been authorized. This interpretation does not expand the meaning of section 841(a), but rather seeks to define the exemption clause of that section"

and in footnote 20 (511 F.2d 1062, 1070):

"*** Section 841(a) makes it illegal to dispense controlled substances except as authorized. The term dispense is defined so as to include the prescribing of a controlled substance by a practitioner which is defined to include a registrant (physician or pharmacist) who acts within the course of professional practice. 21 U.S.C. §802(10), (20). Since the wholesale selling of prescriptions for controlled substances is beyond the scope of professional practice, a physician (or pharmacist who participates in such a scheme) is not acting as a practitioner. Thus, if such an individual's actions are not that of a practitioner they are not authorized under the subchapter and the exception clause of section 841 does not apply."

The court in that case also stated (511 F.2d 1062, 1067):

"Section 841 makes it 'unlawful for *any* person . . . to distribute or dispense controlled substances . . .' That prohibition is absolute unless otherwise 'authorized by [the] subchapter.' We deem it to be significant that the exception refers only to a distributing or dispensing that is authorized by the subchapter rather than a broader exception which would totally exempt all registrants."

As we have found above, the writing of prescriptions under the facts before us does not bring those prescriptions within the exception of "[e]xcept as authorized by this Act."

The conviction and sentence are affirmed.

Affirmed.

GOLDBERG and McGLOON, JJ., concur.