THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FAIRBANK CHUA, Defendant-Appellant.

First District (5th Division)   No. 85—3309

Opinion filed May 15, 1987.—Rehearing denied June 16, 1987.

Philip C. Parenti and Kathleen A. Snyder, both of Philip C. Parenti, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Arleen C. Anderson, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This cause involves an appeal by defendant, Dr. Fairbank Chua, from a jury conviction of delivery of a controlled substance, Valium, in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1401). Dr. Chua was sentenced to 24 months' probation and fined $5,000. The facts of this case are as follow.

Dr. Chua received his medical license in 1980 and had a private medical practice at St. Joseph's Medical Center (Medical Center). On September 28, 1983, undercover special agents Clem Ferguson and Willie Davis went to the Medical Center to investigate illegal drug trafficking. Agent Ferguson posed as a public aid recipient and had a public aid medical card (green card) in the name of Eli Jamorki. Ferguson testified that he told Dr. Chua that he wanted some Valium, cough syrup with codeine, and Darvocet. Ferguson related that the doctor then looked down his throat with a tongue depressor and took his blood pressure. The agent also testified that Dr. Chua never asked him about his medical symptoms or medical history. However, Dr. Chua's medical charts reflect that Ferguson complained of a cold that he had had for 1½ weeks with headache, nervousness, and sleeping problems. Dr. Chua wrote Ferguson-Jamorki a prescription for Ampicillin, a cough syrup without codeine, 5 milligrams of Valium (nonrenewable), and Darvocet for pain. The charts also show that a mouth and lung examination indicated bronchitis and that the throat was lightly congested. Ferguson stated that he went to the clinic to get codeine, which he did not get.

Agent Davis' green card contained the name of Kevin Smith.

Davis waited approximately 35 minutes while Ferguson was in the examining room with Dr. Chua. Davis testified that he told the doctor that he wanted some Valium and Tussionex cough syrup because he had a cold, was nervous, and could not sleep. Although Davis stated that Dr. Chua asked him questions, he could not recall the specific inquiries. Dr. Chua's medical charts indicate that Davis had a persistent cough, nasal-chest congestion, nervousness, sleeping difficulties, and emotional instability. Davis' police report indicates that he had a brief examination of the throat and chest area. Davis received prescriptions for 5 milligrams of Valium (nonrenewable), Ampicillin, and cough syrup without codeine. Dr. Chua advised Davis that he would have to pay $5 to the pharmacy for Tussionex since it was not covered by public aid.

Six and one-half months later, on April 18, 1984, Agent Leonard Day, posing as public aid recipient James Jones, visited the Medical Center. Day told Dr. Chua that he had a back problem, which was coded on his green card. The agent testified that he told the doctor he wasn't sick but that he wanted some Valium. Day stated that Dr. Chua responded by saying he had to record some ailment, whereupon the agent said he had back problems. The medical charts indicate that Day had a back problem caused by an automobile accident five years earlier, nervousness, and sleeping difficulties. The chart further reflects that the patient's blood pressure, pulse, and respiration were taken. The agent weighed himself and the chart correctly reflects his weight as 205 pounds. Day also testified that when he presented his green card to the doctor saying that James Jones was not his real name, Dr. Chua just nodded his head. Dr. Chua prescribed 5 milligrams of Valium (nonrenewable) and, according to the chart, instructed Day to apply moist heat to his back. Day could not remember whether he was told to apply heat treatments. The agent denied that Dr. Chua took any medical history or that he checked his blood pressure, pulse, and respiration, or other items completed on the chart. Before leaving Dr. Chua's office, Day asked which pharmacy he should use; Dr. Chua told him he could fill his prescription at any Chicago-area pharmacy.

On May 9, 1984, Tommie Wofford, an investigator for the State Police, posed as a public aid recipient named Kevin Smith, which was the same name used by Agent Davis in September 1983. Wofford testified that Dr. Chua noted that his last visit was on September 28. The agent told the doctor that nothing was wrong with him; he only wanted a Valium prescription. Wofford stated that Dr. Chua said, "For your nerves?" and, when the agent made no response, Dr. Chua

wrote on Kevin Smith's medical chart and made out a prescription for 5 milligrams of Valium (nonrenewable). Wofford then offered the doctor cash for a prescription for Doriden; Dr. Chua refused the cash and would not write the prescription. Wofford next asked for prescriptions for Valium and birth control pills for his wife. The doctor refused and told Wofford that his wife should come in to the clinic. Wofford then inquired whether he was going to get a physical examination, to which the doctor responded that no examination was needed for nerves. Kevin Smith's chart indicates that he was nervous, having personal problems, and was "shaky" most of the time. At the time of this visit, Agent Wofford was unaware that another agent had visited Dr. Chua in September using Kevin Smith's green card.

Five days later, on May 15, Agent Wofford again visited Dr. Chua, dressed differently and using the name of Willie Barnett. He told the receptionist that he had left his public aid identification card at home; the receptionist replied that the clinic had no record for Willie Barnett. Wofford then stated that he had been there the week before and had used the name of Alexander. Wofford testified that Dr. Chua inquired about his family, childhood, blood pressure, and whether he had had a recent blood test. When asked what his ailment was, Wofford told the doctor that he wanted some Valium. Dr. Chua asked if he had bad nerves and the agent responded, "Doc, I've got a lot of problems." Wofford told Dr. Chua that Valium made him "feel good." While Dr. Chua was writing a nonrenewable prescription for 2 milligrams of Valium, Wofford offered cash for a prescription of Doriden and cough syrup. Dr. Chua refused the request.

A psychiatrist, Dr. Leon Kuhs, testified for the State as an expert witness. Dr. Kuhs is the medical director of the Alcohol Substance Abuse Treatment Center at Martha Washington Hospital. Dr. Kuhs heard only Agent Ferguson's testimony and, based on that and the police reports concerning all of the agents' visits to Dr. Chua, he responded to the State's hypothetical questions by stating that there was insufficient medical information on which to issue prescriptions for Valium to any of the agents-patients. However, on cross-examination, Dr. Kuhs stated that he had not seen Dr. Chua's medical charts, which the State had received through discovery. Dr. Kuhs further stated that the medical charts were the normal and usual charts used by doctors and, based on the information in those charts, there was a medical basis for prescribing Valium for each of the agents. He also stated that the amounts of Valium, with no refills, prescribed for the recorded ailments were not necessarily indicative of drug abuse or addiction. Dr. Kuhs noted that the number of patients seen by a doctor

is pertinent to the extensiveness of an examination. Dr. Chua saw between 10 and 40 patients a day.

An internist, Dr. John Baron, was called as an expert witness by Dr. Chua. Dr. Baron heard all of the agents' testimony and saw their medical charts. He testified that there was no doubt the prescriptions were issued in the normal course of medical practice and further, that the dosages gave no indication of drug abuse. Dr. Baron, who had worked in medical clinics in the past, stated that under the circumstances of Dr. Chua's practice, he (Baron) believed that Dr. Chua did the best that he could in his prescribing.

On appeal, Dr. Chua asserts five alleged errors: (1) the State failed to prove its case beyond a reasonable doubt; (2) a provision of the Illinois Controlled Substances Act, as applied to Dr. Chua (Ill. Rev. Stat. 1983, ch. 56½, par. 1312(h)), is unconstitutionally vague; (3) the State's hypothetical questions of its expert witness were unduly prejudicial; (4) the indictment was defective in that it charged the offense of illegal delivery of, rather than dispensing of, a controlled substance; and (5) the prosecution's attempt to define "reasonable doubt" during rebuttal argument was improper.

■ We will first address the issue as to whether the State proved its case beyond a reasonable doubt. A doctor illegally prescribes narcotics only when such prescribing is done outside the regular course of treatment pursuant to section 312(h) of the Illinois Controlled Substances Act, which reads in pertinent part:

"The responsibility for the proper prescribing or dispensing of controlled substances is upon the prescriber ***. An order purporting to be a prescription issued to any individual, *which is not in the regular course of professional treatment *** and which is intended to provide that individual with controlled substances sufficient to maintain that individual's or any other individual's physical or psychological addiction, habitual or customary use, dependence, or diversion of that controlled substance* is not a prescription within the meaning and intent of this Act; and the person issuing it, shall be subject to the penalties provided for violations relating to controlled substances." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 56½, par. 1312(h).)

Accordingly, the State's burden of proof necessitated a showing beyond a reasonable doubt that Dr. Chua acted outside the regular course of medical practice with the intent to maintain any individual's addiction, habitual use, or diversion of Valium when he prescribed for the undercover agents. The record in this case does not support the verdict beyond a reasonable doubt.

In *People v. Cliche* (1982), 111 Ill. App. 3d 593, 444 N.E.2d 649, this court upheld the conviction of a physician for dispensing Valium based on the testimony of an expert that the doctor did not dispense the drug within the regular course of medical treatment. No evidence was presented by the doctor. In the present case, the State's expert, Dr. Kuhs, also stated that Dr. Chua did not have sufficient data to prescribe Valium for the four undercover agents. But Dr. Kuhs' opinion was in response to hypothetical questions put to him by the State which did not mention information contained in Dr. Chua's medical records.

■ ■ The elements of a hypothetical question must have an evidentiary basis in the record and should contain all material facts to form the basis of the opinion. (*People v. Gibson* (1983), 117 Ill. App. 3d 270, 281, 452 N.E.2d 1368, citing E. Cleary & M. Graham, Illinois Evidence sec. 705.1, at 383 (3d ed. 1979).) Moreover, our supreme court adopted Federal Rule of Evidence 703 in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322. Rule 703 permits an expert to base an opinion on facts not admitted into evidence if the basis is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." (Fed. R. Evid. 703.) The key issue is whether the expert opinion is based on reliable information. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 193, 417 N.E.2d 1322.) And, the basis of an expert's opinion is properly elicited on cross-examination. 84 Ill. 2d 186, 194, 417 N.E.2d 1322.

■ On cross-examination, Dr. Kuhs was asked if he considered medical charts relevant information in rendering an opinion as to whether a doctor acted in the ordinary course of medical practice. He answered, "Yes, certainly." He was then shown Dr. Chua's medical charts for the first time, after which he stated that the information on the charts provided a reasonable medical basis for the Valium prescriptions. Dr. Kuhs also stated that he had prescribed Valium and other controlled drugs without physical examinations, relying on what his patients tell him and his clinical observations of them. The comment to Rule 703 notes that a physician in his own practice bases his diagnosis on numerous and various sources, including "statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." (Fed. R. Evid. 703, Advisory Committee Notes.) It is not reasonable to assume that physicians would rely on police reports alone in forming an expert opinion. It is reasonable for a medical expert to base an opinion on all material facts involving a patient—here, the police reports, the agents' testimony, and the doctor's medical charts. Dr. Kuhs considered the medi-

cal charts relevant to forming an expert opinion and, after examining them, concluded the charts indicated a reasonable basis for the prescriptions.

Defendant's expert, Dr. Baron, testified that based upon the agents' testimony and the medical charts, he had no doubts that the prescriptions were issued in the regular course of medical practice. Both medical experts agreed that the nature of a doctor's practice with a large volume of patients would reasonably circumscribe the extent of an examination and time spent on a patient. A close reading of this record also reveals that the agents' testimony regarding their examinations, with a few exceptions, corroborates the notations on Dr. Chua's charts.

■ A reviewing court will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of guilt. (*People v. Zuniga* (1973), 53 Ill. 2d 550, 559, 293 N.E.2d 595.) In the present case, viewing the evidence in the light most favorable to the State, it is apparent that it was not shown that Dr. Chua acted outside the regular course of medical practice. The only way a contrary conclusion could be reached would be to ignore the statements made by Dr. Kuhs on cross-examination. Considering the two expert opinions, when based on a totality of the facts, Dr. Chua's prescriptions were issued in the course of acceptable medical practice.

The State also failed to show that Dr. Chua intended to provide the agents with enough Valium to maintain an addiction. Dr. Chua refused the agents' requests for prescriptions for other controlled substances. He also refused a cash offer; he refused to prescribe for one of the patient's wife; he refused to prescribe cough syrup with codeine, although he did prescribe cough medicine; and he refused to recommend a specific pharmacy. Both Dr. Kuhs and Dr. Baron testified that the prescriptions were appropriate for the agents' recorded symptoms. The five prescriptions were for 2 and 5 milligrams of Valium and were nonrenewable. The only repeat patient, Kevin Smith, visited Dr. Chua twice in eight months. Dr. Chua's compensation from public aid was based on office visits, not prescriptions. Neither medical expert stated that, under the totality of these circumstances, there was any indication of drug abuse or addiction. Accordingly, the verdict was inconsistent with the evidence since the necessary elements were not proved beyond a reasonable doubt.

■ Concerning defendant's assertion that section 312(h) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1312(h)) is unconstitutionally vague, it is well established that Illinois

194

courts will not decide a constitutional question if the cause can be determined on other grounds. (*In re Harrison* (1983), 120 Ill. App. 3d 108, 111, 458 N.E.2d 146.) Therefore, as a result of our foregoing conclusions, we decline to address this issue.

■ Furthermore, defendant's contention that his indictment was defective because he was charged with illegal delivery of, instead of dispensing, controlled substances is without merit. The court in *People v. Cliche* (1982), 111 Ill. App. 3d 593, 598, 444 N.E.2d 649, held that it is appropriate to prosecute a doctor suspected of "drug pushing" under section 401 (Ill. Rev. Stat. 1983, ch. 56½, par. 1401 (illegal delivery of controlled substances)) rather than under the less serious violation of illegal dispensing pursuant to section 312(h) (Ill. Rev. Stat. 1983, ch. 56½, par. 1312(h)). Since we are reversing the judgment of conviction on the basis of the first issue, there is no necessity to consider the remaining issues.

Reversed.

SULLIVAN, P.J., and PINCHAM, J., concur.