Robert E. HALES *v.* STATE of Arkansas

CR 88-135                                     771 S.W.2d 285

Supreme Court of Arkansas
Opinion delivered June 5, 1989

*James G. Lingle, P.A.*, and *George D. Oleson*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant, Robert Hales, a licensed physician, prescribed unneeded controlled substances to four of his patients at their request. He was charged with and convicted of violating the Arkansas Controlled Substances Act. We reverse and dismiss the judgment of conviction because this particular statute is not applicable to a licensed physician.

The Arkansas Controlled Substances Act, specifically Ark. Code Ann. § 5-64-401(a) (1987), makes it unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance. The State contends that the appellant "delivered" controlled substances as defined in the Act by writing prescriptions for other than a true medical purpose. "Delivery" is defined under the Act as "the actual, constructive, or attempted *transfer* from one person to another of a controlled substance or counterfeit substance in exchange for money or anything of value, . . . ." *See* Ark. Code Ann. § 5-64-101(f) (1987). The prescribing of a controlled substance by a licensed physician is not the "delivery" of a controlled substance; in fact, prescribing by a licensed physician is protected conduct under the Act. *See* Ark. Code Ann. § 5-64-308(a), (c), and (d) (1987). If the General Assembly had intended for "prescribing" to come within the definition of "delivery" it would have said so. It certainly knows how to do so. For example, "prescribing" is specifically included in the definition of "dispense" in the Act. Ark. Code Ann. § 5-64-101(g).

The State contends that the prescribing of a controlled substance by a licensed physician does come within the term "delivery" because that term is described, in part, as the "constructive transfer" of a controlled substance. The argument ignores the cardinal rule of construction of criminal statutes and further ignores the prohibition against vagueness in criminal law.

First, the cardinal rule of construction: "It is well settled that penal statutes are strictly construed with all doubts resolved in favor of the defendant, and nothing is taken as intended which is not clearly expressed." *State* v. *Scarmardo*, 263 Ark. 396, 565 S.W.2d 414 (1978) (citing *Austin* v. *State*, 259 Ark. 802, 536 S.W.2d 699 (1976)). The Supreme Court of the United States has written, "Statutes creating crimes are to be strictly construed in favor of the accused. They may not be held to

extend to cases not covered by the words used. . . ." *United States* v. *Resnick*, 299 U.S. 207 (1936). The statute in question provides that the prohibited act is to "transfer from one person to another . . . ," in other words, to carry or take from one person to another. Here, the licensed physician wrote a prescription; he did not carry or take, either actually or constructively, a controlled substance from one person to another. Because of the strict construction requirement, we decline to interpret the words "constructive transfer" to include writing a prescription.

■   Secondly, such an interpretation would violate the rule against vagueness. That rule provides that a citizen is entitled to a fair warning in definite language of the prohibited act. *Jordon* v. *State*, 274 Ark. 572, 626 S.W.2d 947 (1982). No licensed physician could be expected to understand from this Act that the writing of a prescription could constitute the delivery of a controlled substance.

We are aware that in *Moore* v. *United States*, 423 U.S. 122 (1975), the Supreme Court held that the Federal Controlled Substances Act is applicable to physicians prescribing controlled substances outside the course of professional practice. However, the federal statute is significantly different from ours. The Federal Act contains provisions which require physicians to register and then provides specific prohibitions for physicians. 21 U.S.C. §§ 822, 823, 842, and 843 (1981). These specific provisions dealing with physicians, and other registered persons, show an intent to include these persons within the Federal Act. However, our General Assembly declined to adopt these specific provisions of the Uniform Act, *see* Ark. Code Ann. § 5-64-301 (1987).

In addition, the Federal Act specifically prohibits any person from manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled substance. 21 U.S.C. § 841(a)(1) (1981). The Federal Act defines "dispense" to include prescribing. Since the Federal Act prohibits "dispensing," which by definition includes prescribing, it is clear that it can be applied to physicians. Our legislature, on the other hand, chose to prohibit the "delivery" rather than the "dispensing" of controlled substances. The term "dispense" is only defined in our Act with relation to the protected conduct of

physicians writing prescriptions under Ark. Code Ann. § 5-64-308. Thus, the prescribing of controlled substances cannot be a violation of our Controlled Substances Act.

Some other state appellate courts have held that a physician delivered a controlled substance within the meaning of their particular statute by prescribing it. *See People* v. *Cliche*, 111 Ill. App. 3d 593, 444 N.E.2d 649 (1982); *Santoscoy* v. *State*, 596 S.W.2d 896 (Tex. Crim. App. 1980); *People* v. *Alford*, 405 Mich. 570, 275 N.W.2d 484 (1979); and *State* v. *Vinson*, 298 So. 2d 505 (Fla. Dist. Ct. App. 1974). On the other hand, some courts have reached the same result we do. *See, e.g., Evers* v. *State*, 434 So. 2d 813 (Ala. 1983); *People* v. *Lipton*, 445 N.Y.S.2d 430 (1981); *State* v. *Best*, 292 N.C. 294, 233 S.E.2d 544 (1977); *Baker* v. *Superior Court of Los Angeles County*, 100 Cal. Rptr. 771 (1972).

The appellant's conduct would have been more appropriately addressed under our Uniform Narcotic Drug Act, Ark. Code Ann. §§ 20-64-201 to -226 (1987), which was enacted with this specific type of conduct in mind. This Act specifically provides that it is unlawful for a physician to *prescribe*, administer, or dispense any narcotic drug other than in good faith and in the course of his professional practice. *See* Ark. Code Ann. § 20-64-202 and § 20-64-207 (1987). The Act provides for a fine of not more than $2,000 and imprisonment of two to five years for any violation of the Act. *See* Ark. Code Ann. § 20-64-220 (1987).

Reversed and dismissed.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. I concur entirely in the dissenting opinion of Justice Glaze, in which I join. The Uniform Controlled Substances Act defines "delivery" as including the "constructive transfer" of drugs. Ark. Code Ann. § 5-64-101 (1987). I submit that when a practicing physician repeatedly prescribes drugs for individuals who avowedly have no medical need and who tell him they want the drugs to sell, or for a husband who drives a truck, or for a boyfriend, those are palpably constructive transfers and are a violation of our statute. A paramount purpose of uniform acts is to give consistency and uniformity to the law. Yet the majority rejects an interpretation

of our act in a manner consistent with that of other courts, preferring a narrow interpretation that strains both common usage and common sense. I respectfully dissent.

HICKMAN, J., and GLAZE, J., join this dissent.

TOM GLAZE, Justice, dissenting. The majority court construes the Arkansas Controlled Substances Act so as to exclude from its proscriptions physicians who have unprofessionally and unlawfully prescribed a controlled substance to his or her patient. In doing so, the court reasons that the Act makes it unlawful for any person to deliver — rather than dispense or prescribe — controlled substances. Thus, even though the state prosecuting attorney showed at trial that the appellant, a physician, prescribed controlled drugs to patients who had no medical need for them (one patient had told the appellant that she planned to sell the drugs), this court's interpretation of the Act precludes the appellant's conviction. The court's holding is contrary to the strong weight of authority.

In fact, courts in other jurisdictions with Controlled Substances Acts similar to Arkansas's have held that a *physician who dispensed* controlled substances *by prescriptions* not in the regular course of professional treatment *can be prosecuted for illegal delivery* under the Controlled Substances Act. *State* v. *Vinson*, 298 So.2d 505 (Fla. App. 1974) (court held delivery includes the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship, and the unlawful issuance of a prescription constitutes a delivery under the Florida Comprehensive Drug Abuse Prevention and Control Act); *People* v. *Cliche*, 111 Ill. App. 3d 593, 444 N.E.2d 649 (1982) (a medical doctor who dispensed controlled substances by prescription not in regular course of professional treatment can be prosecuted for illegal delivery under the Illinois Controlled Substances Act); *see also People* v. *Chua*, 156 Ill. App. 3d 187, 509 N.E.2d 533 (1987); *People* v. *Alford*, 405 Mich. 570, 275 N.W.2d 484 (1979) (physician dispensing controlled substances not in the course of professional practice or research can be prosecuted for unlawful delivery of a controlled substance under the Michigan Controlled Substances Act); *Santoscoy* v. *State*, 596 S.W.2d 896 (Tex. Crim. App. 1980) (court held physician who illegally dispenses or

prescribes controlled substances violates the Texas Controlled Substances Act that makes it unlawful to knowingly or intentionally deliver a controlled substance); *see also State* v. *Harris*, 564 S.W.2d 561 (Mo. Ct. App. 1978); *State* v. *Vaccaro,* 142 N.J. Super. 167, 361 A.2d 47 (1976); *contra State* v. *Best*, 292 N.C. 294, 233 S.E.2d 544 (1977).

Clearly, a physician who is honest and ethical, and dispenses controlled drugs in a good faith effort to treat and cure patients, has no fear of the criminal sanctions under our Controlled Substances Act. However, a person's mere status as a licensed physician who may dispense or prescribe prohibited drugs does not give that doctor the blanket right to abuse his authority and profession by dispensing drugs without relation to his sworn professional obligations. *Cf. State* v. *Vacarro*, 142 N.J. Super. at 173, 361 A.2d at 50-51; *see also United States* v. *Moore*, 423 U.S. 122 (1975).

In *Moore,* the Supreme Court held that registered physicians "can be prosecuted under sect. 841 [of the Federal Controlled Substances Act] when their activities fall outside the usual course of professional practice." The Court noted further that "the legislative history indicates that Congress was concerned with the nature of the transaction rather than with the status of the defendant." The Federal Act parallels Arkansas's Act, which results from uniform law drafted to achieve uniformity between the several states and those of the federal government. *See* Uniformed Controlled Substances Act: Commissioners Prefatory Note, 9 U.L.A. 2 (1988).[1]

As previously stated, the great weight of authority supports the conclusion that a physician who writes prescriptions outside the course of his professional practice is subject to prosecution under the Controlled Substances Act. In the present case, the majority does not even suggest that the appellant had acted *within* the course of his professional practice when he prescribed prohibited drugs to his patients. In fact, the record solidly

---

[1] The Federal Act makes it unlawful for any person knowingly or intentionally to *dispense* a controlled substance. However, as already discussed, most state jurisdictions have construed dispensing or the prescribing of drugs to mean the *delivery* of controlled drugs.

supports the conclusion that the appellant acted improperly when issuing the prescriptions that led to the charges filed against him under the Act.

The majority opinion surmises that it would have been more appropriate for the appellant to have been charged under the Uniform Narcotic Drug Act, which makes it unlawful for a physician to prescribe or administer any narcotic drug other than in good faith and in the course of his professional practice. *See* Ark. Code Ann. §§ 20-64-202 and 20-64-207 (1987). The Narcotic Drug Act provides for penalties that are substantially less than those provided under the Arkansas Controlled Substances Act. Specifically, the Narcotic Act provides for a fine of not more than $2,000 and imprisonment of not less than two nor more than five years, while the Controlled Substances Act provides that convictions under the Act are class Y and class C felonies, which have a range of fines from $10,000 to $250,000 and terms of imprisonment from three years to forty years, or life.

Clearly, the legislature did not envision the Narcotics Act to be the sole Act under which a physician could be charged; evidence of this fact can be seen in the severity of the penalties available under the respective Acts. It is inconceivable that a physician could receive no more than a $2,000 fine and five years imprisonment for a major drug transaction(s) carried out under the guise of prescriptions. In other words, the Narcotics Act fails to deal with physicians who are also drug pushers, and in this vein, I would submit that penal statutes should not be interpreted so strictly so as to reach absurd consequences which are clearly contrary to legislative intent. *Russell* v. *State*, 295 Ark. 619, 751 S.W.2d 334 (1988). Furthermore, in *Miller* v. *State*, 273 Ark. 508, 621 S.W.2d 482 (1981), this court stated that where two statutes authorize different ranges of punishment for the same conduct, the prosecutor may decide to proceed under the more severe statute.

In sum, this case involves a question of first impression in construing the Arkansas Controlled Substances Act and unquestionably this court could affirm the appellant's convictions if we followed the decisions rendered on this issue by courts in most other jurisdictions. The underlying rationale given by these courts that have allowed physicians to be charged and convicted

for improper prescriptions under controlled substances laws that prohibit the unlawful delivery of such drugs compels me to adhere to the same rationale when interpreting Arkansas's Act on this same subject. Therefore, I would affirm the lower court's conviction judgment against the appellant.

HICKMAN and HAYS, JJ., join this dissent.