Arcadio **ALARCON**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 41A04–8911–CR–530 [1].

Court of Appeals of Indiana,
Fifth District.

June 20, 1991.

Rehearing Denied July 22, 1991.

---

**1.** This case was reassigned to this office on January 2, 1991.

James H. Voyles, Dennis E. Zahn, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

RUCKER, Judge.

After a trial by jury Appellant-defendant Arcadio Alarcon (Alarcon) was convicted on 34 counts of Dealing in a Schedule IV Controlled Substance, Class C felonies.[2] He received a total executed sentence of twelve (12) years imprisonment with eight (8) years suspended and ten (10) years probation.

Alarcon presents two interrelated issues, which we combine and rephrase as follows:

Whether Ind.Code § 35–48–4–3(a)(1) is applicable to the act of writing a prescription by a licensed physician.

We find that it is applicable and therefore affirm.

The facts most favorable to the State disclose that Alarcon, a licensed physician, was the subject of a police investigation into his drug prescription practices. During the period of November, 1987 to May, 1988, a paid informant and undercover police officers were sent to Alarcon's office to solicit prescriptions. Alarcon issued prescriptions to them for Diazepam (Valium), Temazepan (Restoril), Dextropropoyphene (Darvon), and Dextropropoxyphene (Darvocet), all Schedule IV Controlled Substances. Ind.Code § 35–48–2–10.

In some instances, Alarcon wrote the prescriptions without a physical examination or questioning as to the need for the drugs. At other times, Alarcon wrote prescriptions with only a cursory examination and questioning; sometimes he relied on the patient's memory as a basis for refilling prescriptions. The visits lasted no

---

**2.** Ind.Code § 35–48–4–3 provides in pertinent part:

(a) A person who:

(1) knowingly or intentionally manufactures or delivers a controlled substance, pure or adulterated, classified in schedule IV;

\* \* \* \* \* \*

commits dealing in a schedule IV controlled substance, a Class C felony.... (This Act was later amended by P.L. 165–1990, Sec. 6.)

more than ten minutes; some were as short as two minutes.

On one occasion, Alarcon wrote a prescription for one patient in the name of another and advised the first patient to take the prescribed medication. He also issued post-dated prescriptions when the date of issuance was too close in time to prior prescriptions, and wrote prescriptions that were not requested. On a few occasions Alarcon refused to issue a requested prescription, expressing concerns about police surveillance. Many of the prescription transactions were accompanied by Alarcon's sale of discount watches, jewelry and clocks to the same individuals.

Alarcon contends that the conduct forming the basis for the charges against him is the issuing of prescriptions; and that the statute under which he was convicted does not apply to licensed physicians issuing prescriptions. Therefore, according to Alarcon, the evidence against him as a matter of law is insufficient to sustain the verdicts. We disagree but note this is a case of first impression in the State of Indiana.[3]

■■■ Courts in a number of states have held that their dealing statutes, similar to ours, do not apply to the writing of prescriptions by licensed physicians. *Hales v. State* (1989), 299 Ark. 93, 771 S.W.2d 285; *Ex parte Evers* (1983), Ala., 434 So.2d 813; *State v. Best* (1977), 292 N.C. 294, 233 S.E.2d 544; *Santoscoy v. State* (1980), Tx. Cr.App., 596 S.W.2d 896. On the other hand courts in other jurisdictions have held to the contrary. *United States v. Moore* (1975), 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333; *State v. Carr* (1981), (App.), 95 N.M. 755, 626 P.2d 292, *cert. den.*, 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145; *People v. Alford* (1979), 405 Mich. 570, 275 N.W.2d 484; *People v. Cliche* (1982), 111 Ill.App.3d 593, 67 Ill.Dec. 413, 444 N.E.2d 649. As set forth below we adopt the reasoning of those jurisdictions which hold

that their "dealing" statutes apply to licensed physicians who write prescriptions for scheduled drugs.

In support of his argument Alarcon relies on Ind.Code § 35–48–3–3(c), which provides in pertinent part:

> Persons registered by the board under this article to ... dispense ... controlled substances ... may ... dispense ... those substances to the extent authorized by their registration and in conformity with the other provisions of this chapter.

and Ind.Code § 35–48–1–12, which provides in part:

> 'Dispense' means to deliver a controlled substance to an ultimate user ... by ... the lawful order of a practitioner and includes the prescribing ... necessary to prepare the substance for that delivery.

Alarcon contends, consistent with the foregoing statutory authorization, a licensed physician who dispenses controlled substances by writing prescriptions within the scope of his registration, has an absolute defense to a charge of Dealing in a controlled substance.

The United States Supreme Court rejected a similar argument in *Moore, supra,* and held that only the lawful acts of registrants were exempted from prosecution under the federal act. Referring to a statutory authorization nearly identical to Ind. Code § 35–48–3–3, the Court observed: "This is a qualified authorization of certain activities, not a blanket authorization of all acts by certain persons." *Id.,* 423 U.S. at 131, 96 S.Ct. at 340. Likewise in *Carr, supra,* the Court of Appeals of New Mexico was called upon to interpret statutes with only slightly differing language from that of Ind.Code § 35–48–4–3, and in a statutory scheme nearly identical with the Indiana C.S.A. That court held "When a physician writes a prescription not for a

---

**3.** Addressing the legal questions raised in this case requires some attention to the statutory scheme in which Ind.Code § 35–48–4–3 (the "dealing statute") appears. The dealing statute is a provision of the Indiana Controlled Substances Act (C.S.A.), Ind.Code 35–48–1–1 *et seq.* The C.S.A. is patterned after the Uniform Controlled Substances Act, which is similar to a federal act, 21 U.S.C. § 801 *et seq. See* Uniform Controlled Substances Act: Commissioners Prefatory Note, 9 U.L.A. 188 (1979). In interpreting the Indiana act we will be guided by case law from other jurisdictions, to the extent that our statutes are similar.

legitimate medical purpose nor in the usual course of his professional practice, he is 'distributing' drugs. His activity in so doing is not authorized by the C.S.A." *Id.*, 626 P.2d at 299.

The reasoning of *Moore* and *Carr* is applicable to the case before us. Alarcon wrote prescriptions based on little or no medical examination, and issued post-dated prescriptions and prescriptions that were not requested. The jury was entitled to find that Alarcon issued prescriptions for controlled substances with no legitimate purpose, or not in the usual course of his practice as a licensed physician.

In further support of his claim Alarcon relies upon *Tobias v. State* (1985), Ind., 479 N.E.2d 508, wherein a registered pharmacist was convicted of Dealing Narcotic Drugs under Ind.Code § 35–48–4–1, which is identical to the dealing statute before us except for the applicable substances. The charges against the defendant were based on his acts of leaving drugs and prescription forms for an accomplice at a drop-off point. On appeal the defendant argued that his conviction under the dealing statute was inappropriate because of his status as a registered pharmacist and that he could be prosecuted only under other provisions of the C.S.A. which concern the rules regulating the dispensing of controlled substances by registered practitioners.

Our supreme court rejected the pharmacist's claim of immunity based on his registered status. "There is no language in Ind.Code § 35–48–4–1 that prohibits the charging of a pharmacist with this offense." *Id.* at 511. However, the court did observe:

A pharmacist . . . would have an absolute defense to an information predicated on Ind. Code § 35–48–4–1 if it were shown that he or she was duly licensed and dispensed controlled substances as required by his or her registration or by a valid prescription. This was not the fact here.

*Id.* at 511.

Relying on the foregoing reasoning, Alarcon argues that his convictions were in error because he had an absolute defense to the charges against him, as they were based on his acts of dispensing, that is, writing prescriptions as a licensed physician. We cannot accept Alarcon's argument.

We agree that *Tobias* can be read to support a holding that the writing of a valid prescription by a licensed physician is an absolute defense to a charge of dealing in a controlled substance. However we believe by its use of the qualifier "valid," our supreme court limited prescription writing activity to those that are "lawful". The record shows Alarcon was not writing valid prescriptions.

Generally, the writing of a prescription is without legal effect unless certain standard prerequisites are met: "A prescription to be effective must be issued for a legitimate purpose in a reasonable quantity by an individual practitioner acting in the usual course of his professional practice." 856 Ind. Administrative Code 2–6–3(a). "A prescription or drug order for a legend drug is not valid unless it is issued for a legitimate medical purpose by a practitioner acting in the usual course of his business." Ind. Code § 16–6–8–3.5(a).

Since dispensing under the C.S.A. is restricted to delivery with a lawful prescription, *see* Ind.Code § 35–48–1–12, it follows that the statutory authorization for dispensing in Ind.Code § 35–48–3–3(b) is also limited to lawful prescriptions. The "absolute defense" language cited in *Tobias* provides Alarcon no refuge from a charge of dealing in a controlled substance. A physician who issues prescriptions without a legitimate purpose or outside the usual course of his professional practice may be prosecuted for violation of Ind.Code § 35–48–4–3.

Alarcon's final contention is that the dealing statute is inapplicable to his conduct in writing prescriptions because the C.S.A. is intended to regulate the conduct of "street traffickers." He argues that it is the Legend Drug Act, Ind.Code § 16–6–8–1 *et seq.*, not the C.S.A., which is clearly intended to apply to physicians who have allegedly gone beyond the bounds of their professional practice. "It is unlawful for a

practitioner to knowingly issue an invalid prescription or drug order for a legend drug." Ind.Code § 16–6–8–1. Alarcon's argument is that he was simply prosecuted under the wrong statute. We disagree.

A similar issue was discussed in *Copeland v. State* (1982), Ind.App., 430 N.E.2d 393. In that case the defendant was convicted of dealing in narcotics under Ind. Code § 35–48–1–1. On appeal he made an argument which turned on the contention that the sale of a legend drug under Ind. Code § 16–6–8–3 is a lesser-included offense of dealing in narcotics. The First District of this court firmly rejected that argument and held:

> There exists duplicity in the provisions of the Legend Drug Act and the crimes dealing with controlled substances. The Legend Drug Act is included in Title 16 of the Indiana Code. Although the statute provides that any violation of I.C. 16–6–8–3 is a class D felony, our examination of the statute reveals that it is primarily designed to safely regulate the distribution and use of prescription drugs. The statutory provisions dealing with controlled substances, Ind.Code 35–48–1–1 *et seq.*, are criminal statutes. While both the Legend Drug Act and the offenses relating to controlled substances prohibit similar conduct, the duplication allows prosecutors discretion. It is well settled that where a defendant commits an act which is in violation of more than one criminal statute, absolute discretion is vested in the State to decide which statute(s) the defendant will be charged with violating.

*Id.* at 398.

The reasoning in *Copeland* applies to the issue before us today. Even if Alarcon could have been charged under the Legend Drug Act, the prosecutor was vested with absolute discretion to charge him under Ind.Code § 35–48–4–3, if that offense applied to his conduct in issuing prescriptions. "When ... a physician acts without any legitimate legal purpose and beyond the course of professional practice by selling prescriptions that allow the bearer to obtain controlled substances, his conduct should be treated like any street-corner pill-pusher." *Carr, supra,* 626 P.2d at 300 (*Quoting United States v. Green,* 511 F.2d 1062 (7th Cir.1975)).

We find no error in Alarcon being charged under the C.S.A.

Judgment affirmed.

RATLIFF, C.J., and MILLER, J., concur.