2010 Ark. App. 643

**Joe A. NEWMAN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–16.**

Court of Appeals of Arkansas.

Sept. 29, 2010.

Richard Ernest Worsham, Worsham Law Firm, P.A., Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Asst. Atty. Gen., Little Rock, for appellee.

DAVID M. GLOVER, Judge.

In August 2008, appellant Joe Newman, a level-four sex offender, was in the seventeenth month of a twenty-four-month period of probation for an underlying offense of failure to register as a sex offender. At that time the probation/parole office received a report that appellant was working at a daycare center. In October 2008, the State filed a petition to revoke his probation, alleging that he had violated the terms and conditions of his probation in the following manner:

> Violations: RULE # 13–15 FEES–A.) Mr. Newman has failed to pay fees owed and is currently delinquent $50 in PSF and $525 to JCSO.
> RULE # 16 SPECIAL CONDITIONS–A.) On and before 08/19/2008, Mr. Newman knowingly violated Arkansas Criminal Code [section 5–14–129] of the Sex Offender Registration Act of 1997 by working at TLC Daycare.

After a hearing on the petition, the trial court revoked appellant's probation and sentenced him to six years in the Arkansas Department of Correction. Appellant has appealed, contending that the "trial court erred in determining that he violated the conditions of his probation by performing carpentry work at a daycare." We agree and reverse the order revoking appellant's probation.

### Hearing Testimony

Lashondra Brown, who handles sex-offender cases and is appellant's probation officer, was the State's sole witness. She testified that on August 19, 2008, she received the report that appellant was working at a daycare center. She said that she followed up on the report by talking with appellant and calling the owner of the daycare center. Appellant admitted he had been working at the daycare, at first claiming to have only worked there after-hours but later admitting that he had worked there during the time children were present. He described his work to her as putting up doors and installing baseboards. She told him not to return to the daycare or to go anywhere that children congregated.

When Brown spoke to the daycare owner, the owner praised appellant but also confirmed that appellant had only recently informed her of his sex-offender status. According to Brown, the owner reported being shocked. Brown told the owner appellant could no longer work there.

Brown further testified that at the time the petition to revoke was filed, appellant was two months, or $50, delinquent on his payments to the Department of Community Correction; and that he was also behind $525 on his payments to the Jefferson County Sheriff's Office. She acknowledged that he had made some payments; that he had never tested positive for drugs

while on probation; and that he had performed his community-service work. She said that the report that he was working at a daycare center prompted the petition to revoke.

Brown explained that the "sex-offender acknowledgment form" is the form appellant signs when he goes to register as a sex offender with the sheriff's department. She agreed that it deals only with limitations on where he can reside. She testified that appellant was aware of the conditions that he is supposed to abide by, even if she did not have the form he signed; that he has three previous sex offenses; and that he has previously been on probation for sex offenses. She acknowledged, however, that he did not sign any paperwork saying he cannot be within two thousand feet of a school, as far as working.

Brown testified that when she approached appellant about the report of him working at a daycare center, she advised him that he knew what his conditions were and that he was not supposed to be anywhere around minor children. She said that she instructed him not to return to the daycare or any other school and that he was not to accept work for any position that would cause him to be around children. She stated that she knew appellant did carpentry work and that it was the job he had on probation. The condition of the sex-offender act that he violated by working on doors and baseboards at the daycare center, according to Brown, was "that he's not supposed to be within two thousand feet of a school, park or a daycare." Brown then stated,

[E]ven if he didn't violate the law, he didn't get charged with violating the law. He violated one of his special conditions. . . . I don't have—I don't have anything that states that Mr. Newman cannot work at the daycare that he has signed. I don't have anything signed that states that he is not to volunteer or work in an occupation where he is primarily and directly working with children. *Going there and putting up a couple of doors and some baseboards is primarily and directly with children.* He admitted to it. He admitted to being there while it was kids at the daycare. *I did not ask him if he was interacting with the kids. I did not ask him if he had any sort of interaction with children. It's based on him working at the daycare and he's a Level 4 sex offender, classified as a sexually violent predator. That's why.* As far as what is in the statute or in the rules read to him that he violated, there's nothing that's in his probation conditions, nothing, if that's what you're referring to. Which conditions are you referring to? He violated the Sex Offender Registration Act of 1997, amended by the—amended in the year 2000. I do not have a copy in my file.

*I do not have anything that I can now present into evidence that said he could not go to a daycare and he could not work in a daycare other than the statute that says that he is not to primarily—to engage in an occupation or participate in a volunteer position that requires him to work or interact primarily and directly with children. I don't have a copy of what I claim that he violated.*

(Emphasis added.)

On redirect, Brown stated,

I do have a copy of the rules that he signed. It does have Rule 16 on it. "You must comply with the special conditions imposed by the court." I do have a copy of my violation [report. It] shows that Rule 16 is a special condition. That he violated Arkansas Criminal Code 5–14–[129] of the Sex Offender Registration Act of 1997 by working at the [daycare center.]

Brown testified that it is a violation of sex-offender probation to work at a daycare center; that sex offenders are told of the restrictions on their employment when they come into probation; that sex offenders have to report their employment with the sheriff's department; and that she has copies of the forms that probationers fill out in sex-offender registration.

Brown identified State's Exhibit 1 as a document in her file that is kept in the normal course of probation business, and identified it as the sex-offender acknowledgment form. She said that it was signed by appellant, Joe A. Newman, on October 29, 2007. She explained that item number seven on the form provides: "Pursuant to Act 1779 of 2005, it is unlawful for a sex offender who is required to register under the Sex Offender Registration Act of 1997, 12–12–901, and who has been assessed as a Level 3 or 4 offender to engage in a occupation or participate in a volunteer position *that requires a sex offender to work or interact primarily and directly with children under the age of 16 years.*" (Emphasis added.) She testified that there were children under sixteen years of age at the daycare center where appellant admitted working.

On re-cross, Brown acknowledged that she did not know how long appellant worked at the daycare center, but stated that under her interpretation he was "not to be around kids, period." At this time, the State rested.

Without offering any testimony on behalf of appellant, his counsel argued that the language of the statute did not encompass doing carpentry work at a school because it provides that a sex offender is not to directly engage in an occupation or participate in a volunteer position where he has direct interaction with children. He argued that the State presented nothing to show that appellant was "intentionally going around and interacting with children in any shape, form or fashion, which is specifically what this law is set up for." He asserted that all the evidence showed was that "he went over and did some carpentry work without any interaction being shown with any children at all."

The trial court concluded that appellant's interpretation was strained and "downright ludicrous," revoked appellant's probation, and sentenced him to six years in the Arkansas Department of Correction. The only reason given for revocation in the order was based on the trial court's conclusion that appellant's work at the daycare center violated Arkansas Code Annotated section 5–14–129 (Repl.2006). There was no ruling on appellant's alleged failure to pay fines.

*Standard of Review*

In revocation proceedings, the burden is on the State to prove a violation of a condition by a preponderance of the evidence. *Dooly v. State,* 2010 Ark. App. 591, 377 S.W.3d 471. The State's burden of proof in a revocation proceeding is less than that required to convict in a criminal trial, and thus evidence that is insufficient for a conviction may be sufficient for a revocation. *Id.* In order to revoke a suspended sentence, the State need only prove one violation. *Id.* When the sufficiency of the evidence is challenged on appeal, we will not reverse a trial court's decision to revoke unless its findings are clearly against the preponderance of the evidence. *Id.* Because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the superior position of the trial court to decide these matters. *Id.* However, with respect to matters of statutory construction, our review is de novo. *Lampkin v. State,* 2009 Ark. App. 382, 309 S.W.3d 223.

Section 5–14–129

■ Even though the State presented evidence that appellant had violated the terms of his probation by nonpayment of fines, the trial court did not make a ruling on that basis for revocation. The probation officer's position seemed to be that the terms of appellant's probation prohibited him from being around children at all, but the only written provision that she was able to produce in support of her position was dependent upon Arkansas Code Annotated section 5–14–129. *See also Whitener v. State,* 96 Ark.App. 354, 241 S.W.3d 779 (2006) (because our statutory law requires that every probationary sentence contain condition that the probationer not violate the law, and because everyone is presumed to know the law, State not required to introduce into evidence the probationary condition that appellant not violate the law.). Accordingly, our review is limited to the trial court's conclusion that appellant violated Arkansas Code Annotated section 5–14–129 (Repl.2006) by performing carpentry work at the daycare center.

In *Williams v. State,* 364 Ark. 203, 208, 217 S.W.3d 817, 819–20 (2005), our supreme court explained:

> The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Thomas v. State,* 315 Ark. 79, 864 S.W.2d 835 (1993); *Mountain Home Sch. Dist. v. T.M.J. Builders, Inc.,* 313 Ark. 661, 858 S.W.2d 74 (1993). In interpreting a penal statute, "[i]t is well settled that penal statutes are strictly construed with all doubts resolved in favor of the defendant, and nothing is taken as intended which is not clearly expressed." *Hales v. State,* 299 Ark. 93, 94, 771 S.W.2d 285, 286 (1989). However, even a penal statute must not be construed so strictly as to defeat the obvious intent of the legislature. *Rus-*

*sell v. State,* 295 Ark. 619, 751 S.W.2d 334 (1988). In this regard, we will not construe penal statutes so strictly as to reach absurd consequences which are clearly contrary to legislative intent. *Cox v. State,* 313 Ark. 184, 853 S.W.2d 266 (1993); *Williams v. State,* 292 Ark. 616, 732 S.W.2d 135 (1987); *Ashing v. State,* 288 Ark. 75, 702 S.W.2d 20 (1986).

> In addition, we construe a criminal statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Hagar v. State,* 341 Ark. 633, 19 S.W.3d 16 (2000).

Arkansas Code Annotated section 5–14–129 (Repl.2006) provides in pertinent part:

> (a) It is unlawful for a sex offender who is required to register under the Sex Offender Registration Act of 1997, § 12–12–901 et seq., and who has been assessed as a Level 3 or 4 offender to engage in an occupation or participate in a volunteer position *that requires the sex offender to work or interact primarily and directly with a child under sixteen (16) years of age.*

(Emphasis added.) The question then presented by this appeal is whether appellant's performance of carpentry work at a daycare center violated this statute, thereby violating the terms and conditions of his probation. We have concluded that it did not.

Appellant's presence at the daycare center performing carpentry work was the only proof of violation of this statute presented by the State. There was no evidence that he otherwise interacted with the children in any fashion. Strictly construing this statute, with all doubts resolved in favor of the appellant, and taking nothing as intended that is not clearly

expressed, we have determined that appellant's performance of carpentry work at the daycare center is not encompassed within the meaning of this statute. There was no evidence that appellant's presence at the daycare center involved him working or interacting primarily and directly with the children. At the same time, our strict construction of this statute does not lead to an absurd result for the specific reason that the language's clear emphasis is that there be no direct contact with children. That is, the language of the statute is not so concerned with *where* a level-four sex offender works as it is with making sure that the sex-offender's work does not involve direct and primary contact with children. Had the legislature intended for level-four sex offenders "not to be around kids, period," they could have said so, and if that was a condition of appellant's probation, the probation office should have produced a copy of that condition at the revocation hearing. With the case that is before us, we are constrained to reverse the revocation of appellant's probation.

Reversed.

GLADWIN and ABRAMSON, JJ., agree.