Kenneth Anthony BANKS, Debra Ann Faulkner *v.*
STATE of Arkansas

CR 93-543                                    869 S.W.2d 700

Supreme Court of Arkansas
Opinion delivered January 31, 1994

*McArthur & Finkelstein*, by: *William C. McArthur*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal by the two appellants from convictions arising out of the death by shooting of Jessie Williams. Kenneth Anthony Banks appeals the judgments of conviction for first degree murder and felon in possession of a firearm and the accompanying sentences of 30 years and 6 years, to be served consecutively. Debra Ann Faulkner, his wife, appeals her judgment of conviction for second degree murder and her sentence of 15 years. She also was convicted of a felon/firearm charge and received the same 6-year sentence. We find no merit in the grounds raised for reversal, and we affirm.

Late afternoon on November 5, 1991, Banks, accompanied by Faulkner, and her sister, Victoria Michele Fantine, went to the Maryvale Apartments in Little Rock. Faulkner had previously lived in one of the apartments and wanted to check her mail. While at the apartment complex, Faulkner saw the victim, Jessie Williams, whom she recognized as having stolen property from her earlier that year. He had also abused her sister, Fantine. When the three left the apartments, Faulkner told Banks that Williams had pushed Fantine into the apartment swimming pool and tried to drown her. He then stole Faulkner's $55 starter shirt, and when the sisters pursued him, he threatened them with a pistol.

Banks was infuriated by the story. He followed Williams in his vehicle accompanied by Faulkner and Fantine and then went to a liquor store. Later that same evening, the three returned to the Maryvale Apartments and went to Williams's apartment. Banks had a 12-gauge shotgun in his truck which he had borrowed from his brother. Williams came to the door, and Banks talked to him with Faulkner and Fantine present. Banks then retrieved the shotgun from the truck and approached Williams with the gun at his side. He told Faulkner and Fantine to go back to the truck. One shot was fired by Banks which hit Williams in the left back area and killed him. Banks admitted the shooting

at trial but testified that Williams acted as if he was reaching for his pistol, and the shooting was justifiable. No guns were found on Williams's corpse or in the apartment. Banks, Faulkner, and Fantine then fled the scene in a late model Toyota 4Runner truck.

Ruby Haynes, the victim's roommate, later testified at trial that she was in the apartment at the time of the killing. She stated that Williams put on a coat, a cap, and a pair of pants before going out to meet Banks. From the apartment window, she could see that Williams was talking with a man who was accompanied by two females. She heard Banks ask the victim if he remembered Faulkner. She also stated that Banks told Williams: "I'm giving you two minutes to strip," and "I came to take you to a early grave." She heard Banks tell Faulkner and Fantine to go to the truck. She then stated that the victim began to take off his coat. When Banks raised the gun, Williams tried to run into the apartment. Banks then shot him. She watched the three drive away in the truck. Haynes also stated that to her knowledge the victim did not have a gun, and investigating police officers did not find one. She added that she did not hear Banks tell the victim to take his hands out of his pockets or to stop reaching.

Fantine and the two appellants contradicted Haynes's testimony at trial. All three maintained that Williams was either fidgeting or reaching in his pocket when Banks shot him. They admitted leaving the scene immediately in Banks's truck and returning the shotgun to its owner who was Banks's brother, Eugene Hampton.

### I. KENNETH ANTHONY BANKS

Banks first argues that there was insufficient evidence to sustain his convictions for first-degree murder and felon-in-possession-of-a-firearm.

On appeal, we test the sufficiency of the evidence before considering other assignments of error. *Cleveland* v. *State*, 315 Ark. 91, S.W.2d (Nov. 15, 1993). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence. *Moore* v. *State*, 315 Ark. 131, 864 S.W.2d 863 (1993). Substantial evidence is evidence which is forceful enough to compel a conclusion one way or the other and which goes beyond suspicion or conjecture. *Id.* We review the evidence

in the light most favorable to the appellee and consider only that evidence which tends to support the verdict. *McClure* v. *State*, 314 Ark. 35, 858 S.W.2d 103 (1993).

At trial, Banks stated that he was angered by what Williams had done to his wife and her sister. He admitted that he confronted the victim and shot him with a shotgun. Ruby Haynes testified that he threatened Williams first and then shot him without provocation as he tried to run into his apartment. Williams was shot in the left back area. No gun was found on the victim or on the premises. Both Haynes and another apartment resident, Robert Battles, testified that Williams had no guns. Banks then fled. This evidence, under any test, is sufficiently substantial to sustain a first-degree-murder conviction.

Banks argues for reversal on the basis that the shooting was justified because he thought that the victim was reaching for a gun. This argument was made to the jury, and the jury was instructed on self-defense. It chose not to accept the defense. Irrespective of Banks's evidence on this point, on appeal we need only consider that evidence which supports the verdict, and we have concluded that the proof is substantial. *Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987). The trial court correctly denied the motion for directed verdict.

For his second point, Banks contends that the trial court erred in refusing to grant his motion to declare a mistrial. He cites this court to Fantine's testimony that she received a threatening phone call from the Pulaski County jail to the effect that if she testified, she would be killed. This left the clear impression with the jury, according to Banks, that he was behind the call while a resident of the jail. We disagree that any prejudice requiring a mistrial transpired.

A mistrial is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any other curative relief. *Meny* v. *State*, 314 Ark. 158, S.W.2d (September 15, 1993); *Sullinger* v. *State*, 310 Ark. 690, 840 S.W.2d 797 (1992). The trial court has wide discretion in granting or denying a motion for mistrial, and its decision will not be disturbed except where there is an abuse of discretion or manifest prejudice to the complaining party. *Magar* v. *State*, 308 Ark. 380, 826 S.W.2d 221 (1992);

*Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992).

At trial, Banks moved for a mistrial based on perceived prejudice arising from the following colloquy:

> Prosecutor: Have you talked to Debra or Kenneth since this case has been set for trial?
>
> Fantine: Yes, I have.
>
> Prosecutor: Have you talked to - - When did you talk to Kenneth?
>
> Fantine: I didn't talk to him, talk to him on the phone. I got a threatening call but I mean I'm not saying it was his voice but somebody called me and threatened my life if I showed up in court.
>
> . . . .
>
> Prosecutor: Did you receive a phone call from Kenneth Banks?
>
> Fantine: I received a phone call from the county jail. I can't say if it was his voice. Alls that I heard was a collect from Debra and I accepted it and they said if you show up in court you won't live to see the next day.
>
> Prosecutor: It was collect from where?
>
> Fantine: The county jail. Correction facility.
>
> Prosecutor: Okay. And where was Kenneth Banks at the time?
>
> Fantine: In the Correctional —

At that point the motion for mistrial was made, and the trial court denied it. The court next asked defense counsel if a curative instruction was desired. The defense chose not to take advantage of this relief. Banks now asserts that Fantine's testimony suggested that Banks had acknowledged his guilt by threatening Fantine in an attempt to manipulate her testimony.

On the issue at hand, we previously have stated that facts which indicate that a defendant is incarcerated are not prejudicial *per se. See Hill* v. *State*, 285 Ark. 77, 685 S.W.2d 495

(1985). We further have stated that prejudice will not be presumed. *Id.* In the instant case, any prejudice that resulted from this colloquy is remote. Fantine denied before the jury that the telephone voice was that of Banks. Further, the fact that Banks was in jail was not prejudicial in and of itself. It would come as no surprise to the jury to learn that a person charged with capital murder was a resident of the county jail before trial.

Any lingering implication that Banks was behind the call was speculative at best. Moreover, any prejudice could well have been cured by a jury admonishment, and this was not requested. An admonishment is the proper remedy where the assertion of prejudice is highly speculative, which was certainly the situation in the case before us. *See Russey & Way* v. *State*, 257 Ark. 570, 519 S.W.2d 751 (1975). The dramatic remedy of a mistrial was simply not warranted. The trial court did not abuse its discretion in denying the motion.

## II. DEBRA ANN FAULKNER

Faulkner, for her part, urges that the evidence at trial was insufficient to sustain a guilty verdict for either second degree murder or possession of a firearm by certain persons.

At the close of the first day of trial, Faulkner moved only for a directed verdict on her capital murder charge. We have held that such a limited motion does not preserve the issue of sufficiency of the evidence for a second-degree murder conviction. *Hickson* v. *State*, 312 Ark. 171, 847 S.W.2d 691 (1993). The following morning, however, the trial court considered Faulkner's motion as encompassing lesser included offenses and the felon/firearm charge. He again denied the motion for directed verdict, and Banks and Faulkner proceeded with their respective cases. Because the trial court weighed the issues now raised on appeal, we will consider them.

Faulkner urges that the state failed to present proof that she acted as an accomplice to the murder. In this regard, she maintains that there was no evidence that she was aware of Banks's intent or plan to shoot Williams.

On appeal, when the theory of accomplice liability is implicated, the case is affirmed if there is sufficient evidence

that Faulkner acted as an accomplice in committing the alleged offense. *Purifoy* v. *State*, 307 Ark. 482, 822 S.W.2d 374 (1991). An accomplice is one who, with the purpose of promoting or facilitating the commission of an offense, solicits, advises, encourages, coerces, aids, agrees to aid, another person in the planning or committing of the offense. Ark. Code Ann. § 5-2-403 (1987). Mere presence, acquiescence, silence, or knowledge that a crime is being committed, in the absence of a legal duty to act, is not sufficient to make the person an accomplice. *Fight* v. *State*, 314 Ark. 438, S.W.2d (October 18, 1993). Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in the crime in a manner suggestive of joint participation. *Smith* v. *State*, 310 Ark. 247, 837 S.W.2d 279 (1992).

Faulkner was found guilty of second degree murder as an accomplice to the actions of Banks. There is ample evidence to support her conviction as an accomplice. In her testimony at trial, she admits telling Banks that Williams had previously threatened her and stolen a shirt from her. She also stated that she identified the victim to Banks. She accompanied Banks when he followed Williams in the truck and when he returned to the victim's apartment. She also went to the door of Williams's apartment with Banks, and the victim shouted obscenities at her. She watched as Banks took the shotgun from the truck. Faulkner also testified that she fled the scene of the crime with Banks and was there when the shotgun was returned to Banks's brother, Eugene Hampton.

Second degree murder is committed when one, with the purpose of causing serious physical injury, causes the death of a person. Ark. Code Ann. § 5-10-103 (Supp. 1991). Evidence abounded that Banks intended to cause Williams serious physical injury, and Faulkner aided in this effort. The fact that she did not intend to murder Williams and did not know that Banks intended to do so is not an element of the offense. Her argument on this point is without merit.

Faulkner further contends that sufficient proof that she possessed the shotgun, as a convicted felon, was lacking. She admitted her felony conviction but maintained that she did not exer-

cise any control over the weapon so as to be guilty of Ark. Code Ann. § 5-73-103 (Supp. 1991).

We disagree. She certainly occupied the truck with Banks where the shotgun was located in plain view between the seats which made it immediately accessible to her and subject to her control. In analogous contraband cases, we have held this to be sufficient to constitute constructive possession. *See, e.g., Plotts* v. *State,* 297 Ark. 66, 759 S.W.2d 793 (1988). We have also applied this test to possession of firearms by way of dictum. *Moore* v. *State,* 304 Ark. 257, 801 S.W.2d 638 (1990). Finally, it was Faulkner, who returned the shotgun to its owner. We cannot say that these circumstances do not support the conviction.

Affirmed.

HOLT, C.J., not participating.