Charles B. STANLEY *v.* STATE of Arkansas

CR 93-1023                                           875 S.W.2d 493

Supreme Court of Arkansas
Opinion delivered May 9, 1994

*Green & Henry*, by: *J. Bradley Green*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Charles B. Stanley was arrested after two DeWitt police officers stopped a vehicle in which Stanley was a passenger. Lawrence Stanley, Charles's brother, was the driver of the vehicle. The officers viewed some speakers and a stereo in the back seat of the car. The policemen subsequently obtained a warrant, searched the Stanley vehicle and recovered several items of what were determined to be stolen property. Afterwards, Lawrence and Charles's nephew, William Stanley, were also placed under arrest. All three men were each charged in separate informations with two counts of burglary and two counts of theft of property. Lawrence gave a tape recorded statement on the same day he was arrested in which he claimed to have been the only participant in the burglaries. However, after William's arrest, William gave two written custodial statements wherein he admitted that he, Charles and Lawrence participated in the burglaries of two DeWitt churches from which they took certain stereo equipment and speakers. Later, William wrote several letters to the prosecuting attorney, attempting to recant the portion of his prior statements implicating Charles's involvement. Eventually, however, William entered a negotiated guilty plea, and received a sentence of seven years imprisonment in exchange for his testimony against Charles.

At Charles's trial, William testified that he, Charles and Lawrence were staying at Elizabeth Hill's house when they came up with the idea of burglarizing the two churches. Mrs. Hill is William's grandmother and Charles's and Lawrence's mother. According to William, he, Charles and Lawrence broke into the first church, removed two Peavey amp speakers, a portable radio/cassette player, a dual cassette player, and other stereo equipment. They placed these stolen items in Lawrence's car. The Stanleys then proceeded to the second church, where they broke in with a crowbar. After gaining entry, they located and placed a VCR and other equipment on the floor when they discovered a safe. They then attempted to break into the safe. William stated that he and his uncles abandoned most of the property they found in the second church because they had no room for it in the car.

Angela Fischer, William's ex-girlfriend, also testified against Charles, stating that she was at the Hill residence where she witnessed Charles, Lawrence and William gathering up stolen items such as stereo equipment and speakers and preparing to dispose of the items by throwing them off of a bridge in DeWitt. Fischer also testified that the Stanleys gave her a Sony "jam-box," which she later gave to the police.

Bob Paxton, a DeWitt police officer, who was present when Lawrence's vehicle was stopped and searched, testified for the state. Paxton stated that, on the date of the arrests, he and another officer had stopped a red 1979 Ford Thunderbird which was driven by Lawrence, and they observed a large quantity of speakers and stereo equipment in the back seat of the car. He then arrested Charles, who was a passenger in the car, and transported him to the police station "for investigation." The officers ordered Lawrence to drive his car to the county jail, where the car was impounded. After the officers obtained a search warrant, they recovered the items in the car that were later identified as being property that had been reported stolen from the two DeWitt churches.

For his defense, Charles called, as witnesses, Rebecca Brown, Elizabeth Hill, and Barbara Nash. Ms. Brown, Charles's former girlfriend, stated that she, Charles and his mother, Mrs. Hill, were at Hill's residence the entire night the two burglaries took place. Mrs. Hill corroborated Brown's testimony. Hill stated that, because of the configuration of her house, it would be impossible for anyone to come in or go out of the door without Mrs. Hill being aware of it. Barbara Nash, William's mother, testified that William "had been known to lie," and in fact, "never tells the truth." Nash went on to state that her son "doesn't know how to tell the truth" and called him "a pathological liar."

Based upon the foregoing evidence, Charles was found guilty of the burglary and theft counts with which he was charged, and was sentenced as a habitual offender. Charles Stanley filed a pro se notice of appeal and was allowed to proceed in forma pauperis. He also filed motions to replace counsel, to secure records, and a motion to reappoint counsel, alleging his attorney's efforts on his behalf at trial were ineffective. Charles's motions were denied.

For reversal, Charles Stanley's counsel, appointed on

appeal, argue eight points, but only one has been properly preserved. His first three arguments concern accomplice testimony and its insufficiency. He claims (1) that Angela Fischer was an accomplice as a matter of law, or at least a fact issue existed as to this issue, (2) that the corroborating evidence was insufficient to sustain the accomplice testimony and (3) that Fischer's testimony should not be given any more weight than William Stanley's. In considering these three matters, we note that it was Charles Stanley's burden to establish at trial that Fischer was an accomplice to the crimes with which Charles was charged. Charles failed to meet that burden. *Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993). He also has failed to produce a record sufficient to support his contentions on appeal. *Jones* v. *State*, 314 Ark. 383, 862 S.W.2d 273 (1993).

▌ Charles Stanley's other points not preserved include (1) his list of a dozen acts or omissions of trial counsel which he claims made counsel ineffective, (2) the prosecutor's reference during sentencing to Stanley's parole eligibility, (3) two undisclosed state witnesses being allowed to testify, and (4) a juror, who was a member of one of the burglarized churches, being permitted to serve. To raise his charge of ineffective assistance of counsel on direct appeal, Stanley was required to raise the issue at trial or by a motion for new trial, which he failed to do. *See Missildine* v. *State*, 314 Ark. 500, 863 S.W.2d 813 (1993). Concerning Stanley's arguments as to the prosecutor's parole eligibility remarks and the state's undisclosed witnesses being allowed to testify, Stanley again failed to make contemporaneous objections at trial which were required for appellate review. *Miller* v. *State*, 309 Ark. 117, 827 S.W.2d 149 (1992). And finally, we cannot reach Stanley's assertion that the juror who was a member of one of the burglarized churches was improperly selected because, again, he failed to object. In fact, Stanley voiced acceptance of the juror. *Id.* In addition, in order to preserve for appeal an objection to an empaneled juror, Stanley was required to have exhausted his peremptory challenges and show that he was forced to accept the juror who should have been excused for cause. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). Here, neither the record nor Stanley's abstract reflects Stanley had exhausted his peremptory strikes when he accepted the juror.

We now discuss the one point for reversal which Stanley,

at least in part, did preserve for review. In that point, he contends the trial court erred by denying his motion for mistrial after two witnesses' testimony revealed to the jury that Stanley had prior incarcerations. The first witness, William Stanley, testified on re-cross examination that he was afraid of Charles because, "He's been in the Army, [and] he's been down to the penitentiary before." After the court denied his mistrial motion, Charles stated that he did not want the court to admonish the jury. The second witness, Rebecca Brown, answered the state's question concerning when had the authorities questioned her, and she replied that she had been questioned once right before "they got arrested," and "once during the parole hearing." Stanley never objected to Brown's comments, so we are unable to address that part of Stanley's point on appeal. He did, however, object to William's comments, so we do consider that portion of his argument.

We have recognized that any reference to a defendant's prior convictions during the guilt phase of a bifurcated criminal trial always results in some prejudice. *Strawhacker v. State*, 304 Ark. 726, 729, 804 S.W.2d 720, 722 (1991). Trial courts, however, are granted wide latitude of discretion in granting or denying a motion for mistrial, and the court's decision will not be reversed except for an abuse of that discretion or manifest prejudice to the complaining party. *Id.*; *Bennett v. State*, 284 Ark. 87, 679 S.W.2d 202 (1984). Among the factors we consider on appeal are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *Id.*, *Patrick v. State*, 314 Ark. 285, 862 S.W.2d 239 (1993).

Here, William's statement that Charles had been to the penitentiary was made in response to a question asked by defense counsel, and consequently, no argument can be made that the state in any way elicited the prejudicial response. Also, the trial court offered to admonish the jury, but Charles declined the offer. Charles Stanley's failure to request a cautionary instruction or admonition may not inure to his benefit on appeal. *Hall v. State*, 314 Ark. 402, 862 S.W.2d 268 (1993); *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994). Based on the facts presented, it cannot be said that the trial court abused its discretion in denying Clarles's motion for mistrial.

For the reasons set out above, we affirm.