S.T. and C.B. *v.* STATE of Arkansas

94-163                                                    885 S.W.2d 885

Supreme Court of Arkansas
Opinion delivered October 31, 1994

*Val. P. Price*, for appellant C.B.

*Christopher M. Jester*, for appellant S.T.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This case concerns the criminal offense of possession of a handgun by minors. Both minors, C.B. and S.T., were arrested for possession of a handgun on public school property. The precise issue before us is whether the handgun possessed by the girls falls within the definition of handgun set out in our Criminal Code. We conclude that it does, and we affirm the juvenile judge's disposition of the case.

The facts of this case are not as clear from the record as they might be. S.T. and C.B. are minor girls who in October 1993 attended Annie Camp Junior High School in Jonesboro. Both girls were 13 years old at the time of the offense and were on probation for previous juvenile offenses. On October 21, 1993, the two girls carried the pistol in question, which belonged to a third girl, to school. C.B. testified that they took the weapon to school because S.T.'s mother did not want the pistol in her house. During the trip to school, possession of the gun was transferred to C.B.

At school, C.B. was sent to Principal Jim Ellis because she refused to go to "in-school suspension." While in the principal's office, C.B.'s father, Robert Whitaker, arrived, and C.B. gave the handgun to him. Mr. Whitaker in turn gave the handgun to the principal. Mr. Ellis then removed the hammer which was loose. He did not know whether the pistol had a firing pin in it at that time. Mr. Whitaker slightly contradicts Mr. Ellis's testimony. He believed that the pistol was in two separate pieces before he gave it to the principal.

Subsequently, Karl McSwain, a deputy sheriff for Craighead County, examined the gun and found it to be inoperable because several parts were missing, including the hammer and firing pin. He later testified that without both pieces the gun could not be fired. He did not know whether the gun had those two pieces at the time it was discovered on school property. He admitted that with a hammer and firing pin, the weapon could fire.

Both S.T. and C.B. contended at the ensuing hearing that they could not be guilty of possession of a handgun because the handgun found was not capable of firing rimfire or centerfire

ammunition which is what the definition of "handgun" in the Code requires. Ark. Code Ann. § 5-73-119(b) (Repl. 1993). In addition, S.T. argued that she did not have possession of the firearm on school property.

The juvenile judge adjudicated S.T. and C.B. to be juvenile delinquents. He found C.B. guilty of possessing a handgun on school property, a felony, and S.T. guilty of the lesser offense of a minor in possession of a handgun, a misdemeanor. *See* Ark. Code Ann. §§ 5-73-119(a)(1)(A) and (a)(2)(A) (Repl. 1993). Both girls were committed to the Youth Services Center.

S.T. and C.B. argue one point on appeal. They contend that the handgun possessed was inoperable and, thus, did not qualify as a handgun under state law. The definition of a handgun follows:

> (b) A handgun is a firearm capable of firing rimfire ammunition or centerfire ammunition, and which is designed or constructed to be fired with one (1) hand.

Ark. Code Ann. § 5-73-119(b) (Repl. 1993). Because the hammer was separated and not attached and because the firing pin was missing when the pistol was retrieved by Principal Ellis and then examined by Deputy Sheriff McSwain, appellants urge that this was not a weapon capable of firing the specified ammunition.

The appellants cite this court to multiple cases where various courts have interpreted the applicable statutes in their jurisdictions to require that the gun be immediately operable at time of possession. The State, on the other hand, has directed us to authority holding that under certain definitions the pistol need not be immediately operable for a violation but merely designed to fire certain types of ammunition. Still other authority exists for the principle that if the weapon can be readily assembled to fire, that renders it sufficiently operable for a violation. These three approaches as well as the issue in general are fully analyzed, discussed, and summarized in a 1990 American Law Reports Annotation, *Fact That Gun Was Broken, Dismantled, or Inoperable As Affecting Criminal Responsibility Under Weapons Statute*, 81 ALR 4th 745 (1990). The precluded offenses and the statutory definitions vary from jurisdiction to jurisdiction. This is the first time that we have been called upon to interpret § 5-73-119(b)

and the phrase "capable of firing rimfire ammunition or center-fire ammunition" in the context of operability.

The juvenile judge in his findings and decision appears to have adopted the design interpretation:

> The Court does find — I have examined the weapon, and I do find that it lacks a firing pin. However, it's going to be the Court's finding that the State has met its burden of proof, and that the petition is substantiated beyond a reasonable doubt. In making that determination, I do find that this is a firearm which is capable of firing [rim] fire ammunition or center fire ammunition. And I think the fact whether it was capable of firing that type of ammunition at the time it was taken on school property is of — has no bearing, and is therefore irrelevant.

> It's the Court's finding that the legislature put that definition in the statute to distinguish a firearm which was capable of firing either [rim] fire or center fire ammunition from the type of pistol that might be described as a pellet gun, or a B-B gun, a water pistol, a toy pistol, in other words, something other than this type of weapon. And the [capability] of firing [rim] fire ammunition or center fire ammunition is in reference to the type of ammunition that may be fired from the weapon, and not whether the weapon was capable of actually being — or was mechanically sound and capable of actually firing that ammunition at that place and time. So, I think the capability refers to the ammunition that can be used by that particular weapon, and not whether or not it was operable at the time. So, I'm going to find that the petition has been substantiated.

■■ We affirm the juvenile judge's decision. In so doing, we look to the following principles of interpretation. The basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the legislature. *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993). On the other hand, when this court interprets a penal statute it is well settled that the statute must be strictly construed with all doubts resolved in favor of the defendant, and nothing is taken as intended which is not clearly expressed. *Id.; quoting Hales v. State*, 299 Ark. 93, 771

S.W.2d 285 (1988). But strict construction of penal statutes does not override the primary consideration of all statutory construction, which is to ascertain the intent of the legislature. *Dollar* v. *State*, 287 Ark. 61, 697 S.W.2d 868 (1985).

The definition of handgun in § 5-73-119(b) uses the phrase "capable of firing rimfire ammunition or centerfire ammunition" in its first clause. It does not read, "capable of firing at time of possession;" nor does it merely read "capable of firing" without reference to certain ammunition. The juvenile judge found the association between ability to fire and the particular ammunition to be important and hinged his decision on that point. Moreover, the second clause of § 5-73-119(b) uses the terms "designed or constructed to be fired with one (1) hand." It is our opinion that the General Assembly used the phrase "capable of firing" and "designed or constructed to be fired" synonymously and interchangeably. Thus, if the firearm was designed to fire that particular ammunition, it would qualify as a handgun.

We have also looked to legislative comment on the handgun statute. In enacting Act 649 of 1989, now codified as Ark. Code Ann. § 5-73-119 (Repl. 1993), the General Assembly expressed its intent in the Emergency Clause:

> It is found and determined by the General Assembly that the possession of handguns by young Arkansans contributes substantially to the commission of crimes and injuries to innocent persons, and that the possession of such weapons by persons on school property has resulted in numerous recent injuries and deaths.

Act 649 of 1989, § 7. The General Assembly amended the statute by Act 1189 in 1993 and stated again the purpose of the statute:

> (a) The General Assembly of the State of Arkansas finds that the State of Arkansas is experiencing an increase in violent crime committed by school age juveniles and the growth of street gangs made up largely of school age juveniles. The General Assembly of the State of Arkansas further finds that the number of school related crimes is increasing.

> (b) It is the intent of the General Assembly of the

State of Arkansas to insure the safest possible learning environment for our students, teachers and other school employees.

Act 1189 of 1993, § 1(a), (b).

■ The intent behind this statute is, therefore, clear — to insure safety at our public schools. We have no doubt that C.B. and S.T. knew that they were breaking the law by taking the handgun to school. And we agree with the juvenile judge that whether this particular pistol was immediately operable on school property is irrelevant. It was designed to fire rimfire or center-fire ammunition, and that resolves the issue. Were we to hold otherwise, legislative intent could be easily thwarted. A student could bring a pistol missing one essential part, such as a hammer or firing pin, onto the' school premises with impunity. The handgun could then be assembled on campus at the whim of the possessor. Alternatively, a student could brandish a fully operable weapon on school property, then remove an essential part, claim inoperability, and be beyond the reach of the statute. Such an interpretation not only flies in the face of legislative intent, but it reaches an absurd result. We will not interpret our statutes to reach a result contrary to the clear intent of the legislature. *Mings* v. *State*, 316 Ark. 650, 873 S.W.2d 559 (1994).

In short, the fact that the handgun was temporarily inoperable when school officials discovered it does not prevent prosecution under the statute. In certain authority cited by appellants, the issue surrounded pistols originally constructed to operate but which were so rusted or in such disrepair that operation at time of arrest was impossible. That is not the case before us, and we decline to address those hypothetical circumstances. Here, certain pieces were missing but, according to Deputy Sheriff McSwain, had they been located and the weapon assembled it would have been operable.

Affirmed.