Gary William HUNT *v.* STATE of Arkansas

CR 03-717                                    128 S.W.3d 820

Supreme Court of Arkansas
Opinion delivered November 13, 2003

*William R. Simpson, Jr.*, Public Defender, by: *Sandra S. Cordi*, Deputy Public Defender; and *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant Gary Hunt was charged with possession of cocaine, possession of drug paraphernalia, felon in possession of a firearm, and simultaneous possession of drugs and firearm. Hunt was convicted only of possession of cocaine, felon in possession of a firearm, and simultaneous possession of drugs and a firearm. He was sentenced to concurrent prison terms of ten years for the possession of cocaine, five years for felon in possession of a firearm, and five years for simulta-

neous possession of drugs and a firearm. This case comes to this court by a petition for review. When this court grants a petition to review a decision by the court of appeals, this court reviews the appeal as if it had been originally filed in this court. *Lewellyn v. Lewellyn,* 351 Ark. 346, 93 S.W.3d 681 (2002). Hunt brings two points on appeal: (1) whether the trial court erred in declining to direct a verdict on the charges of felon in possession of a firearm and simultaneous possession of drugs and firearms, because the "firearm" in question did not meet the statutory definition of a firearm due to its degraded condition; and (2) whether as a matter of fundamental error, the trial court erred in declining to direct a verdict on the charge of possession of cocaine and simultaneous possession of drugs and firearms, because the State did not prove that the cocaine in question was a useable amount under *Harbison v. State,* 302 Ark. 315, 790 S.W.2d 146 (1990). We affirm.

At trial, the State presented four witnesses: Lieutenant Hayward Finks, Detective Troy Ellison, Detective Willie Thomas, and State Crime Lab Analyst Lori Stacks. Officer Hayward Finks testified that he was patrolling with other officers on October 11, 2001, in an area where there had been complaints of narcotics activity. Officer Finks testified that he observed Hunt standing in an alley and holding a rifle. The officers drew their weapons and ordered appellant to drop the gun, and he complied. Hunt was then arrested and searched. Officer Finks testified that when he saw the gun it was muddy, rusty, and had mud in the barrel.

Detective Troy Ellison testified substantially the same as Lieutenant Finks regarding the initial contact with Hunt. Ellison stated that the gun was muddy and rusty with mud in the barrel; and, Ellison testified that he did not know whether the gun was able to be shot. However, Detective Ellison testified that he searched Hunt and found a matchbox with a white rock-like substance in it.

The State's third witness, Detective Willie Thomas, testified much to the same regarding Hunt's initial contact with the police officers. Thomas testified that the gun was muddy, rusty, and that if he was going to fire a gun, he would not choose that particular gun. The State's final witness was Arkansas State Crime Lab analyst Lori Stacks. Stacks, a chemist, examined the rock-like substance seized from Hunt. Stacks testified that the substance testified positive for cocaine; however, Stacks did not testify to the weight of the substance.

After the State rested its case, the defense moved for a directed verdict as to all four charges. The trial court granted the defense's motion as to the paraphernalia charge because the State had lost the item in question and descriptions of the item varied. The defense then presented two witnesses, Marchelio Robinson and Samuel Johnson. Both men indicated that they were longtime friends of Hunt, but they never knew him to own a firearm. After these defense witnesses, the defense counsel renewed its motion for directed verdict; however, the renewed motions were denied.

At the close of all the evidence, the trial court found Hunt guilty of the remaining three offenses: simultaneous possession of drugs and firearms, felon in possession of a firearm, and possession of cocaine. At a separate sentencing proceeding, the trial court sentenced Hunt to ten years for the simultaneous possession offense, and ten years for the felon possession of cocaine offense, and five years for felon in possession of a firearm offense. The trial court ran the sentences concurrently. Appellant filed a timely notice of appeal.

For his first point on appeal, Hunt argues that the trial court erred in not granting his directed-verdict motion on the charges of felon in possession of a firearm and simultaneous possession of drugs and firearm. Hunt contends that the firearm which he was in possession of did not meet the statutory definition of a firearm due to its degraded condition. We disagree.

At the close of the State's case, Hunt moved for a directed verdict with regard to two specific issues. First, appellant asserted that because the State had not produced the actual physical item seized from Hunt that subsequently tested positive for cocaine at the crime lab, the State had not adduced substantial evidence with regard to the paraphernalia charge. The trial court granted this motion. However, appellant also moved for a directed verdict with regard to the charges of felon in possession of a firearm and simultaneous possession of drugs and a firearm. The specific issue raised by Hunt was that the rifle which appellant was accused of possessing did not meet the statutory definition of a firearm. Appellant renewed that motion at the close of all the evidence.

The standard of review in cases challenging the sufficiency of the evidence is well established. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Fairchild v. State*, 349 Ark. 147, 76 S.W.3d 884 (2002); *Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001). This court

has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State,* 346 Ark. 388, 58 S.W.3d 336 (2001).

■■ The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Thomas v. State,* 315 Ark. 79. 864 S.W.2d 835 (1993); *Mountain Home Sch. Dist. v. T.M.J. Builders, Inc.,* 313 Ark. 661, 858 S.W.2d 74 (1993). In interpreting a penal statute, "[i]t is well settled that penal statutes are strictly construed with all doubts resolved in favor of the defendant, and nothing is taken as intended which is not clearly expressed." *Hales v. State,* 299 Ark. 93, 94, 771 S.W.2d 285, 286 (1989). However, even a penal statute must not be construed so strictly as to defeat the obvious intent of the legislature. *Russell v. State,* 295 Ark. 619, 751 S.W.2d 334 (1988). In this regard, we will not construe penal statutes so strictly as to reach absurd consequences which are clearly contrary to legislative intent. *Cox v. State,* 313 Ark. 184, 853 S.W.2d 266 (1993); *Williams v. State,* 292 Ark. 616, 732 S.W.2d 135 (1987); *Ashing v. State,* 288 Ark. 75, 702 S.W.2d 20 (1986).

Arkansas Code Annotated § 5-1-102(6) states:

> (6) "Firearm" means any device designed, made, or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use, including such a device that is not loaded or lacks a clip or other component to render it immediately operable, and components that can readily be assembled into such a device.

Ark. Code Ann. § 5-1-102(6) (Supp. 2001). Hunt argues that the testimony from the three police officers indicate that this was not a firearm. Hunt concedes that the General Assembly did not intend to require that a firearm be immediately operable in all instances; however, Hunt states as a purely practical matter, there must be some temporal limit on what may be considered a firearm. Hunt maintains that a firearm is a piece of metal, or combination of metal and work,

depending on the gun. Both wood and metal degrade over time; thus, at some point a gun will reach a point at which it loses its essential characteristics of a gun. Hunt argues that the State's own witnesses uniformly testified that the gun was rusted and was covered with mud and dirt. Two of the three officers stated that they could not tell whether the gun would shoot at all. One of the officers said that he would not fire the gun. Hunt argues that this is not the sort of item that the General Assembly ever intended the State to bring under a firearm.

██ However, a plain reading of the statute reveals that the definition's dependent clause makes clear that it is immaterial whether the firearm–device is loaded or lacks a component, such as a clip or magazine, that could make it capable of expelling a projectile. Thus, once a device is made for the purpose of expelling a projectile by the action of an explosive, it meets the statutory definition of a firearm. Hunt does not argue that the rifle he possessed was not designed to expel a projectile by the action of an explosion, but argued that the rifle was not "immediately operable." Had the legislature intended Hunt's temporal meaning of a firearm, it could have simply defined a firearm as a device only capable of expelling a projectile. Since the firearm in question was designed to be used in a manner consistent with Ark. Code Ann. § 5-1-102(6), the rifle is a firearm within the ordinary meaning of the word used by the legislature. *S.T. and C.B. v. State,* 318 Ark. 400, 885 S.W2d 885 (1994).

For Hunt's second point on appeal, he challenges the sufficiency of the evidence with regard to the quantity of cocaine that Hunt possessed on the night of October 11, 2002. Hunt concedes that this argument was not raised below, but contends that the argument should be considered under the doctrine of plain or fundamental error. Hunt cites *United States v. Olano,* 507 U.S. 725 (1993), for the proposition that in federal court, a balance is struck between requiring contemporaneous objections versus protecting an accused by affording relief of his substantial rights have been injured. Hunt also cites to *Harbison v. State,* 302 Ark. 315, 790 S.W.2d 146 (1990), where Harbinson was found to be in possession of a bottle containing cocaine dust, but the substance was too small to weigh with the state crime lab equipment, which could weigh nothing smaller than one milligram.

■ Notwithstanding, this argument was not raised below; arguments may not be raised for the first time on appeal. *Hinston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). Any possible prejudice would have been properly cured by an admonition to the jury, which was also not requested on this issue. *See Banks v. State*, 315 Ark. 666, 869 S.W.2d 700 (1994); *Stanley v. State*, 317 Ark. 32, 875 S.W.2d 493 (1994). We, therefore, affirm the trial court's ruling.

Affirmed.

IMBER, J., concurs.

BROWN, J., not participating.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the majority opinion to affirm the circuit court. I write separately because, in my view, the majority should not have addressed the merits of Hunt's first point on appeal. In his first point, Hunt argues that, due to the rifle's degradation over time, it was not a "firearm" as contemplated by Ark. Code Ann. § 5-1-102(6) (Repl. 1997). This court does not address arguments made for the first time on appeal. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). Moreover, a party cannot change the grounds for an objection or motion on appeal, but is bound by the scope of arguments made at trial. *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003).

At trial, the following colloquy took place during Hunt's motion for directed verdict:

> DEFENSE COUNSEL: As far as Count III, possession of firearm by certain persons, the prosecutor did prove that Mr. Hunt has been convicted of a felony in the past, but they have not proven that Mr. Hunt possessed a firearm. Your Honor, under 5-1-102, firearm under the general definition under the Arkansas Code defines firearm as means any device designed, made or adapted to expel a projectile by the action of an explosive any device readily convertible to that use, including such a device that is not loaded or lacks a clip or other component, and this is the important part, to render it immediately operable and components that can be readily assembled into such a device. Your Honor, the testimony was today from all the officers involved that the rifle that

was admitted as States's Exhibit No. 2 is rusted. There's dirt in the barrel. There was testimony that there was mud in the barrel the night that Mr. Hunt was arrested. Of course that's going to dry up and be dirt at this point in time. Officer Thomas could not tell us whether that rifle was able to be fired or not. He did testify that he would not choose to use that to fire himself, so the State has not proven that that is a firearm.

THE COURT: I'm going to deny that. If I'm looking at the definition, it's — That's a rifle. It's clearly designed to expel a projectile, and the way the definition reads is it's — The definition includes a device that's not loaded, which that one wasn't, and includes a device that doesn't lack, that doesn't have a clip, and it includes a device that doesn't even have a component necessary to render it immediately operable. Now, whether that was going to blow up on anybody who tried to use it or not, it doesn't matter under the definition. That's clearly a device that fits the definition, and the testimony so far has been he had possession of it. Now, intent as to what he's going to do with it doesn't make any difference under that charge. He is a felon so far, subject to y'all's testimony, that a convicted felon that had possession of that device, and that is a firearm, so it will be denied.

DEFENSE COUNSEL: Our argument is, though, it's not immediately operable.

THE COURT: And I think if you read —

DEFENSE COUNSEL: I mean, I don't think the law says, you know, requires you to show what the intent of the person possessing the instrument. I think it goes to whether that device is able to be fired.

THE COURT: Right. Well, under the definition of 5-1-102 the way I read it, it doesn't matter if — It doesn't even matter if that was missing a piece, a component that was necessary to make it immediately operable. It's still constitutes a firearm, and the testimony so far has been he's in possession. And quite frankly, whether an officer would choose it or not doesn't matter. I don't

know if it's going to blow up if you try to shoot it or not. None of us do. It's clearly a firearm, so we'll deny. The directed verdict is denied on that.

DEFENSE COUNSEL: Although I think the State has to prove that. As far as Count II, the simultaneous possession of drugs and firearms, I have the same argument for that, Your Honor. That the State has not proven that this is a firearm because they have not shown, which they are required to do under the law, to show that it is immediately operable. Or to put in a clip, or bullet or whatever device is missing to make it immediately operable. Although that hasn't been the testimony today. The testimony has been, you know, that it's rusted, it's muddy. I mean, we're not arguing that there's a piece that was taken off the gun, a firing pin or what have you that the Defendant could have put in there to actually make it operable. It's not operable 'cause it's rusted, and muddy and dirty.

No less than four times during his motion for directed verdict to the circuit court, Hunt asserted that the rifle was not a firearm because it was "not immediately operable." On appeal, Hunt concedes that "the General assembly did not intend to require that a 'firearm' be immediately operable." Instead, he now argues that "there must be some temporal limit on what may be considered a 'firearm.'" Stated more specifically, Hunt contends that due to degradation over time, the rifle lost its essential characteristics as a rifle and ceased to be a "firearm" under Arkansas law.

It is clear that Hunt has abandoned his argument to the trial court that the rifle must be "immediately operable," and has now changed the scope of his argument on appeal to contend that a rifle loses its characteristics as a firearm due to degradation over time. It is also clear that the trial court was never presented with the argument Hunt now makes on appeal. As already stated, this court does not address arguments made for the first time on appeal. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). Accordingly, I would not address the merits of Hunt's first point on appeal.

I also note that Hunt urges this court to open our review for a plain-error analysis and address his argument relating to the sufficiency of the evidence. This court has steadfastly refused to adopt a version of the federal plain-error rule. *Lynch v. Blagg,* 312

Ark. 80, 847 S.W.2d 32 (1993). Indeed, Rule 33.1 of the Arkansas Rules of Criminal Procedure provides that the·failure of a defendant to challenge the sufficiency of the evidence will constitute a waiver of any question pertaining to sufficiency of the evidence on appeal. Ark. R. Crim. P. 33.1 (2003); *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003). Hunt now asks this court to overrule long-standing precedent and rules of procedure. First, Hunt explains that this court has already evidenced a willingness to recognize claims of fundamental error through *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The four recognized *Wicks* exceptions are: (1) when the trial court fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) when defense counsel has no knowledge of the error and hence no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly; and (4) under Ark. R. Evid. 103(d) the appellate court is not precluded from taking notice of errors affecting substantial rights, although they were not brought to the attention of the trial court. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). Nonetheless, this court has never held, and Hunt makes no persuasive argument, that the failure of a party to move for a directed verdict falls within one of the *Wicks* exceptions. Quite to the contrary, this court has held that the *Wicks* exceptions do not cover a failure to move for a directed verdict in connection with a claim of insufficient evidence to support a jury's findings on aggravating circumstances at the penalty phase of a capital murder case. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *see also Lovelady v. State*, 326 Ark. 196, 931 S.W.2d 430 (1996)(holding sufficiency claim not preserved and later addressing the *Wicks* exceptions).

Hunt also maintains that the application of Rule 10 of the Arkansas Rules of Appellate Procedure—Criminal operates to deny him due process of law. Rule 10 provides for an automatic appeal and mandatory review in death-sentence cases. Ark. R. App. Proc.—Crim. 10 (2003). However, Rule 10 does not permit this court to review sufficiency-of-the-evidence claims in cases where the defense failed to move for a directed verdict. As such, Hunt has failed to demonstrate that he has been treated differently from a defendant sentenced to death.

Finally, Hunt asserts that opening review to plain error will prevent further litigation in the context of postconviction proceedings and will also promote the interests of fair trials and due

process. Yet, he does not explain how such policy considerations demonstrate that a plain-error review is anything but discretionary with this court. Again, we have steadfastly refused to adopt a version of the federal plain-error rule. *Lynch v. Blagg, supra.*

In sum, Hunt has failed to preserve either one of his two arguments on appeal. Accordingly, I agree that his sentence and conviction should be affirmed.

BROWN, J., not participating.