

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–13–415

|  |  |
|---|---|
| RODNEY STEVEN FLETCHER<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** January 22, 2014<br><br>APPEAL FROM THE FULTON COUNTY CIRCUIT COURT [NO. CR-10-77]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Rodney Steven Fletcher, a habitual offender, was charged criminally on multiple counts in connection with a 2010 break-in that occurred at a pharmacy in Salem, Arkansas. A Fulton County jury found him guilty of commercial burglary, theft of property, and fraud. The jury acquitted Fletcher of eighteen counts of possession of a controlled substance with intent to deliver regarding the same incident. The court sentenced Fletcher to thirty years in the Arkansas Department of Correction on the commercial-burglary conviction, forty years on the theft-of-property conviction, and thirty years on the fraud conviction. The fines totaled $35,000. The court ordered that Fletcher's prison sentences run consecutively. We affirm Fletcher's convictions.

## I.

The evidence at trial showed that Salem Drug Company, a local pharmacy, was broken into just before 6:00 a.m. on 8 October 2010. Video cameras at the pharmacy recorded the break-in. The video footage showed a masked man with a limp taking several thousand pills from the pharmacy. Store records revealed that $10,200 in cash—and $1300 in customer checks held in a Ziploc baggy—were also missing. At least 3000 hydrocodone tablets were among the missing pills; the total purchase value of the controlled substances taken from the pharmacy was around $11,869. The pharmacist who discovered the break-in, Darla York, said that she did not know who broke into the store.

Salem's police chief, Al Roark, told the jury that Fletcher came to mind when he watched the video footage of the break-in. Roark said that he had known Fletcher for all of his adult life because Fletcher had been married to his niece; Fletcher also lived close to the burglarized pharmacy, according to Chief Roark. Based on Chief Roark's information, the Arkansas State Police made Fletcher a person of interest. Police officers ultimately found Fletcher at Glen Jackson's house, a place where he was known to stay.

Members of the Jackson family testified during Fletcher's trial. Glen Jackson's son, David Jackson, said that Fletcher had stayed on their couch, left the house around 2:00 a.m. the morning the break-in occurred, and returned before daylight the same day. Glen Jackson also testified that Fletcher stayed with them the night before the burglary. Glen said that he had taken hydrocodone, Zanax, and drank three or four beers the night before the break-in; that he had slept all night; and that Fletcher woke him up around 8:00 a.m. (the morning the burglary happened) because Fletcher wanted to buy some tennis shoes at

Walmart. Glen also told the jury that he owned a camouflage-hunting mask and that the police took his hunting mask and pistol when they searched his house.

The search of the Jackson home produced these items: a Ziploc baggy containing twenty four checks made out to Salem Drug Store, a mask, wet pants, an oversized purse with many bottles of prescription pills inside, injectable narcotics, a .45-caliber handgun, and boots. Patrolman Johnny Byler testified that when Fletcher turned up at the Jackson home after the police had started investigating, Fletcher held a "wad of cash" and was argumentative. Police officers found $6,350.71 on Fletcher's person; Fletcher told the police it was an inheritance. State Police lead investigator Todd Shaw said that he saw Fletcher walking at the Jackson home with "a limp consistent with the person in the video camera," and that the camouflage-hunting mask and boots the police found in the Jackson home were consistent with the mask and boots the burglar had worn.

Arkansas State Crime Lab chemist Gary Dallas told the jury that the numerous pills the police recovered from the home where Fletcher was staying included hydrocodone and other controlled prescription drugs. Forensic DNA examiner Jennifer Beaty testified that the camouflage-hunting mask the police found contained a "very, very, very tiny amount of DNA," and that she was only able to get a partial profile of the DNA from it. Although Beaty could not say with all scientific certainty that the DNA profile from the mask matched Rodney Fletcher, she told the jury that "you might find one out of 67 million of the Caucasian population have those same areas."

Fletcher moved for directed verdicts at trial, arguing each time that there was insufficient DNA evidence to convict him and that the State failed to prove that he was the person who committed the crimes. Fletcher raises these same points here.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Hunt v. State*, 354 Ark. 682, 128 S.W.3d 820 (2003). When reviewing this challenge we determine whether substantial evidence, direct or circumstantial, supports the verdict. *Lockhart v. State*, 2010 Ark. 278, 367 S.W.3d 530. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict and consider only the evidence that supports the verdict. *Id.* Circumstantial evidence may suffice to support a guilty verdict, but it must exclude every other reasonable hypothesis consistent with innocence. *Id.* The credibility of witnesses is an issue for the jury and not for us. *Id.* Here, the jury was free to believe all or part of the witnesses' testimony and to resolve questions of conflicting testimony and inconsistent evidence. *Id.*

## II.

According to Fletcher, "the only possible evidence" that he was the perpetrator was the inconclusive testimony of DNA expert Jennifer Beaty. The heart of Fletcher's argument is that the jury had to guess to convict him because Beaty could not say with scientific certainty that the DNA profile found on the mask came from him. And the remainder of the evidence, in Fletcher's view, is insufficient to support the convictions because Chief Roark did not identify him as the burglar, the large amount of cash the

police found on him did not connect him to the break-in, and the Jacksons were either under the influence or asleep. We hold that the circuit court did not err in denying Fletcher's motions for directed verdict and that substantial evidence supports his convictions.

In every criminal case the State must of course present enough evidence for a jury to conclude that the defendant committed the crime. *Standridge v. State*, 357 Ark. 105, 113, 161 S.W.3d 815, 818 (2004). The State did so in this case. Investigator Shaw testified that Fletcher had a limp consistent with the person in the security video. Shaw also told the jury that the camouflage-hunting mask, and the boots the police found where Fletcher had been staying when the break-in occurred, were consistent with the mask and boots seen in the pharmacy's security video. Although the State's forensic expert could not say with all scientific certainty that the DNA profile from the mask matched Fletcher, she did identify Fletcher as a contributor to the DNA found on the mask. The 1 in 67 million chance that another Caucasian person's DNA would be a match on the hunting mask is something the jury could consider and weigh for or against the State's case. *Prater v. State*, 307 Ark. 180, 820 S.W.2d 429 (1991). The DNA evidence, in any event, was just some of the circumstantial evidence the State presented in the case.

This brings us to the checks. Darla York said that the checks made payable to the pharmacy were in a plastic Ziploc baggy inside the store. The police later found—in the home where Fletcher had arguably stayed the night of the break-in—twenty-four checks in a Ziploc baggy made payable to Salem Drug Store. As for Fletcher's explanation that the approximately $6,000 of cash the police found on him was his inheritance, the jury

was permitted to consider it as evidence of his guilt. *Burley v. State*, 348 Ark. 422, 73 S.W.3d 600 (2002). That some of the pills recovered from the home Fletcher was staying in matched some of those that were stolen from the pharmacy was also evidence the jury could weigh when deciding whether Fletcher was guilty. *Prince v. State*, 304 Ark. 692, 805 S.W.2d 46 (1991). The jury also heard about Chief Roark's educated suspicion that Fletcher was the one in the pharmacy that morning based on his long and close acquaintance with Fletcher and Fletcher's proximity to the pharmacy. *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008). Finally, it was up to the jury to credit or discredit Glen and David Jackson's testimony about where Fletcher was at what time of day. *Id.*

Evidence of guilt is not less because it is circumstantial. *Coggin v. State*, 356 Ark. 424, 436, 156 S.W.3d 712, 720 (2004). Whether the circumstantial evidence excluded every hypothesis consistent with innocence was for the jury to decide. *Ross v. State*, 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001). We ask only whether the jury resorted to speculation and conjecture in reaching its verdict. *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003). Here, we have concluded that the State placed before the jury substantial evidence that Fletcher was the one who committed the crimes and that the jury did not resort to speculation and conjecture in reaching its guilty verdict.

Fletcher also argues that the jury's verdict was inconsistent because the jury acquitted him of eighteen controlled-substance charges but convicted him of commercial burglary, theft of property, and fraud. This argument was not made to the circuit court after the jury returned its verdict or in Fletcher's motion for a new trial. He cannot raise it for the first time in this appeal. *Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007).

Affirmed.

WYNNE and GLOVER, JJ., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Pamela A. Rumpz*, Ass't Att'y Gen., for appellee.